Charles A. CARLTON and Marie B.
Carlton and Arthur H. Logue,
Jr., and Geraldine W. Logue, Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 66–81T, 72–81T.

United States Claims Court.

Jan. 31, 1985.

Richard S. Cohen, Los Angeles, Cal., for plaintiffs; Jeffrey K. Riffer, Michael Scheinberg and Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., of counsel.

Betty N. Ferber, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

**OPINION**

MAYER, Judge.

These two consolidated cases to recover federal income taxes are before the court on cross-motions for summary judgment

after argument. Plaintiffs [1] Charles A. Carlton and Arthur H. Logue, Jr., were police officers employed by the city of Los Angeles until their retirements in 1972. The questions raised concern the proper characterization of their pensions and the extent of their taxability.

### Background

At the time of plaintiffs' retirements, the city of Los Angeles provided two types of pensions to qualifying members of its police and fire departments, a "service pension" and a "disability pension." The service pension was available to any member with twenty or more years of service upon formal application for retirement. One who retired with a service pension received between 40 and 70 percent of his "normal pension base" depending upon length of service. For our purposes, plaintiffs' normal pension base is their gross monthly salary on the date of retirement.

A disability pension was available to any member determined to be physically or mentally incapacitated "who is incapable as a result thereof from performing his duties." To apply for a disability pension, an applicant had to be examined by and provide written reports from at least three physicians. If an applicant was found to be incapable of performing his duties, the Board of Pension Commissioners determined if the disability was service-connected or not. Persons retired for nonservice-connected disabilities received a disability pension equal to 40 percent of their pension base. A service-connected disability, on the other hand, entitled one to a disability pension of between 50 and 90 percent of the pension base depending upon the degree of disability. Under no circumstances, however, could a service-connected disability pension be less than the amount the annuitant would have received if he had retired on a service pension.

Under the city's pension plan, police and fire department members who were eligible for both a service pension and a service-connected disability pension could apply to be retired under either of the two provisions. However, because the plan prohibited a member from receiving both pensions at the same time, he had to choose between them. If he opted for a service pension, he could not later claim entitlement to a disability pension. If a disability pension was chosen, the plan forbade a member from receiving a service pension as long as continued eligibility for the disability pension existed.

If a Los Angeles police or fire department member or former member incurred any work related illness or impairment resulting in a loss of earning power, he could apply for workers compensation. However, any payments received as a workers compensation award would reduce the amount of disability payments by the amount of the award. The service pension, by contrast, was not affected by workers compensation.

Both plaintiffs are receiving service pensions in amounts based on the number of years they served with the Los Angeles police department. Although shortly after their retirements they received workers compensation awards for service-connected disabilities, their approved retirement applications requested pensions "by reason of years of service." Therefore, despite a finding that they were disabled at the time of their retirements, their pension payments are founded solely on length of service. Nevertheless, because of their disabilities, plaintiffs claim that their service pensions, or at least a portion of them, should be excluded from their gross income as compensation for personal injuries or sickness.

### Discussion

*Section 104(a)(1) Exclusion.*

Section 104(a)(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 104(a)(1) (Code), excludes from gross income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness." Plaintiffs claim that their ser-

---

**1.** Marie B. Carlton and Geraldine W. Logue are parties to Case No. 66–81T and Case No. 72–81T, respectively, because they filed joint returns with their husbands for the years at issue.

vice pensions qualify for this exclusion because they were disabled at the time they applied for them. Since disability pension payments would be excluded from gross income under section 104(a)(1), plaintiffs believe their service pensions should be also. They should not lose the benefit of the exclusion simply because they chose to retire without pursuing the more complex procedure required to obtain a disability pension. The workers compensation award, they argue, is proof of disability at the time of their retirements and qualifies their service pensions for the exclusion.

■ Unfortunately, Treasury Regulation § 1.104–1(b) anticipates their situation and expressly prohibits the exclusion when a retiring employee is granted a service pension even if the retirement is prompted by a physical disability. This regulation states in pertinent part:

> [S]ection 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or the employee's prior contributions, even though the employee's retirement is occasioned by an occupational injury or sickness.

Court decisions have been consistent with this regulation in holding that pension payments are not within the section 104(a)(1) exclusion simply because a taxpayer might have been able to retire on a disability pension had he applied for one. *See Simms v. Commissioner*, 196 F.2d 238 (D.C.Cir.1952); *Scarce v. Commissioner*, 17 T.C. 830 (1951); *Pangburn v. Commissioner*, 13 T.C. 169 (1949). "Retirement pay for length of service is not exempt from taxation." *Scarce*, 17 T.C. at 833.

In *Simms*, a District of Columbia fireman was granted a pension based upon years of service after he had reached the age of 64. Six years later, the District of Columbia Board of Commissioners issued an order stating that at the time of his retirement Simms suffered from a physical disability incurred in the line of duty, and that if he had not been retired for age, he would have been retired for disability.

Simms sought to have his pension payments excluded from gross income under the predecessor of section 104(a)(1), claiming he should have been retired for disability instead of age. The Court of Appeals disagreed. It held that because he was retired for age and not for disability, the pension was not paid as compensation for personal injuries or sickness entitled to the gross income exclusion.

Similarly, the Tax Court's decision in *Pangburn*, 13 T.C. 169, supports the proposition that pension payments received for length of service cannot be excluded from gross income simply because the taxpayer might have qualified for a disability pension. Petitioner there contracted a serious illness during a 29 year Army career. He was informed that it was certain he would receive a disability retirement after his next annual physical. Nevertheless, he opted for an earlier retirement under a statute permitting retirement based on years of service. Because of his physical condition, petitioner claimed he was receiving a disability pension. There was no dispute about his disability, but the court determined that the payments were taxable. *See also Wiedmaier v. Commissioner*, T.C.M. (P–H) ¶ 84,540 (October 9, 1984) (pension computed with reference only to petitioner's length of service, though labeled "reduced disability allowance," is subject to taxation); *Scarce*, 17 T.C. 830 (pension based on length of service is subject to taxation even though taxpayer retired due to a physical disability).

■ These cases show, in accord with Treasury Regulation § 1.104–1(b), that the section 104(a)(1) exclusion does not apply to all pension payments simply because a taxpayer became physically disabled in the line of duty and could have had a disability retirement had he applied for one. To have the benefit of the exclusion, the payments must actually be received as compensation for a physical disability. *See Boystel v. Commissioner*, 20 T.C.M. (CCH) 735, 736 (1961). Here, plaintiffs applied for and received service pensions. The pension payments were determined solely by reference

to the number of years they served with the Los Angeles police department. They may have been disabled at the time of their retirements, indeed there is now no dispute that they were, but the pensions were not paid because of the disability.

Plaintiffs rely heavily on *Dakins v. Board of Pension Commissioners*, 134 Cal.App.3d 374, 184 Cal.Rptr. 576 (1982), which held that a California Workers' Compensation Appeals Board's finding that a police officer had suffered a service-connected disability is binding on the Los Angeles Board of Pension Commissioners when the officer seeks a service-connected disability pension for the same ailment. According to plaintiffs, this transforms their pensions from service to disability.

The police officer in that case actually applied for a disability pension which the pension board denied in the face of the prior finding of disability. If plaintiffs had applied for service-connected disability pensions, *Dakins* would have imposed the prior Workers' Compensation Appeals Board conclusion about their disability on the pension board. This would assure that both boards are consistent on the dispositive issue. But because plaintiffs did not apply for disability pensions, *Dakins* is of no assistance. It does not transform a service pension into a disability pension.

Plaintiffs also cite *Freeman v. United States*, 265 F.2d 66 (9th Cir.1959); *McNair v. Commissioner*, 250 F.2d 147 (4th Cir. 1957); and *Prince v. United States*, 127 Ct.Cl. 612, 119 F.Supp. 421 (1954), as supportive of their position. But they are significantly different from what we have here. Those cases involve military personnel who were initially retired on service pensions but were subsequently recalled to active duty during World War II. While serving their second tours of duty, each was found to be physically incapacitated and no longer fit for active service. All three were retired a second time because of the incapacitation. However, they continued to receive the same service pension benefit as before. The issue in each case was the proper characterization of the pen-

sions after the second, "disability" retirement.

For reasons differing slightly among them, the courts determined that upon the second retirements the pensions were for disability. The initial service retirements were ignored and the pensions were reclassified according to the reason for the second retirements. The second pensions were held to be disability payments entitled to the gross income exclusion. "[W]here such officer recalled to active duty is afterwards returned to retired status on account of disability incurred while in active duty, retirement pay thereafter received by him falls within the meaning of the statute granting tax exemption for pay allowance awarded on the ground of disability." *McNair*, 250 F.2d at 149. The courts found no reason to treat these pensions differently than pensions granted to any other person who is forced to retire from active military duty because of physical disabilities; the prior receipt of service pensions had no significance.

Unlike the disabled military retirees, plaintiffs have retired only once and solely by reason of longevity. They have not been recalled to duty and subsequently been forced to retire a second time for disability. If they had, these military cases might offer some comfort. However, whether, or the extent to which, they might apply would be pure speculation on this record which the court need not indulge.

Plaintiffs' urge the Court of Claims' decision in *Prince* most forcefully. But they misperceive that case as authority for this court to do that which should be done as a matter of equity, and that equity demands recharacterization of their pensions. Concededly and unfortunately, *Prince* was couched in terms of equity. But a careful reading shows it was in reality a conclusion that the Secretary of the Army and the Board for the Correction of Military Records abused their statutory discretion under what is now 10 U.S.C. § 1552 to correct Prince's records to "remove an injustice." 119 F.Supp. at 423. One permissible correction is the conversion of military service pensions to disability pensions

where warranted to secure the tax advantage. *Ray v. United States*, 197 Ct.Cl. 1, 453 F.2d 754, 756 (1972). Unlike Prince, however, plaintiffs have access to no special federal statute authorizing the correction of records, assuming they are deficient. And there is no other authority for the court to treat their pensions as anything other than what they are.

*Section 105(d) Exclusion.*

■ Alternatively, plaintiffs claim that they are entitled to exclude a portion of their pensions under section 105(d) of the Code.[2] This section, in the years here at issue, permitted an exclusion of $100 per week. The exclusion was only applicable, however, if a taxpayer could show that the amounts received were paid as wages, or in lieu of wages, pursuant to a wage continuation plan and that the absence from work was the result of personal injury or sickness. *See* Treas.Regs. §§ 1.105–4(a)(2); 1.105–4(a)(4); 1.105–5. Disability pensions appear to meet this test, *see id.* § 1.105–4(a); service pensions do not.

■ Plaintiffs' entitlement to their pensions has nothing to do with injury or sickness. Any absence from work after the effective dates of their retirements is attributable solely to their decisions to retire. Pensions based on length of service resulting from a voluntary retirement do not qualify for the section 105(d) exclusion. *See O'Neal v. United States*, 314 F.Supp. 383 (D.S.C.1969); *Auerbach v. United States*, 293 F.Supp. 1085, 1088 (W.D.Wash. 1968) ("Plaintiff is not absent because he is injured or sick; he is absent because his superiors ... permitted him to retire early. He is thus not entitled to the benefits of § 105(d)"). Therefore, plaintiffs may not exclude any portion of their pension payments under section 105(d).

*Exclusion under Treasury Regulation § 1.105–6.*

Treasury Regulation § 1.105–6 permits some otherwise ineligible taxpayers to

qualify for the $100 per week exclusion of section 105(d). Prior to April 1974, the Commissioner of Internal Revenue took the position that disability payments made after an employee reached initial retirement age, but before mandatory retirement age, did not qualify for this exclusion. After losing a number of cases in court, in 1974, the Commissioner changed this position and permitted taxpayers who retired on disability pensions before mandatory retirement age to qualify for the exclusion until they reached that age.

Some taxpayers who had already passed initial retirement age, however, had not applied for disability pensions because they thought they were ineligible for the exclusion. Instead, they retired on regular service pensions. To ameliorate this circumstance, Treasury Regulation § 1.105–6 was promulgated to allow a taxpayer who retired before January 17, 1975, to treat the pension received before mandatory retirement age as eligible for the section 105(d) exclusion, if:

(1) His employer had in operation at the time of his retirement a program providing accident and health benefits under a wage continuation plan to which section 105(d) would apply;

(2) The employer certifies, under procedures approved in advance under paragraph (c) of this section, that the employee would have been eligible for wage continuation benefits, under the terms and conditions of his employer's plan, because of personal injuries or sickness;

(3) At the time of the employee's retirement there was no substantive difference between the benefits being actually received and the benefits he would have received had he retired under his employer's wage continuation plan; and

(4) The employee agrees to the adjustments and conditions required by the

---

**2.** All references are to section 105(d) as effective during the years in suit. Section 105(d) was amended by the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520, for tax years after

December 31, 1976, and was repealed for tax years beginning after December 31, 1983, by the Social Security Amendments Act of 1983, Pub.L. No. 98–21, 97 Stat. 65.

Commissioner with respect to amounts excluded under section 72(b) or (d) in taxable years ending before January 27, 1975.

Treas.Reg. § 1.105–6(a).

Defendant challenges plaintiffs' compliance with requirements 2 and 3. In response, plaintiffs have submitted letters from the Los Angeles Board of Pension Commissioners. Plaintiff Carlton's letter states: "Mr. Carlton claims that at the time of his retirement he was disabled and provides proof by submitting a copy of Workers' Compensation Award of 89%." Logue's letter is almost identical and claims a disability of 81%. These letters simply restate plaintiffs' claims that they were disabled at the time of their retirement. They do not certify that they would have been eligible for wage continuation benefits because of personal injuries or sickness at the time of their retirements as required by Treasury Regulation § 1.105–6(a)(2).

■ An acknowledgment of plaintiffs' disability claim is not an employer's certification of an employee's eligibility for wage continuation benefits. Because of this deficiency, plaintiffs have not satisfied the requirement, and cannot qualify for the section 105(d) exclusion under this regulation. In view of this, the court need not address the "substantive difference" issue of Treasury Regulation § 1.105–6(a)(3) also contested by the parties.

### Conclusion

Accordingly, defendant's motion for summary judgment is GRANTED, plaintiffs' motion for summary judgment is DENIED and the cases will be dismissed with costs to defendant.

It is so ORDERED.