Clyde A. **RAY**
v.
The **UNITED STATES**.
No. 442-65.

United States Court of Claims.
Jan. 21, 1972.

Thomas H. King, Washington, D. C., attorney of record for plaintiff. Maurice F. Biddle, Sperryville, Va., of counsel.

William Kalish, Dept. of Justice, Tax Div., Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant. Charles M. Munnecke and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, Judge, DURFEE, Senior Judge, and DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

Plaintiff commenced this action, brought under 28 U.S.C. § 1491, in 1965. Proceedings were suspended in this court to permit plaintiff to apply with the Air Force Board for the Correction of Military Records for remedial action under 10 U.S.C. § 1552. On November 2, 1969, the Assistant Secretary of the Air Force, following the recommendation of the Board, ordered the correction of plaintiff's record.

At the time of his retirement from active duty at the rank of Colonel based on length of service, and not by reason of physical disability, plaintiff was suffering from partial deafness by reason of otosclerosis, and obstruction of the inner

ear, and from an esophageal hiatal hernia and diverticulum, the latter requiring hospitalization. Either of these afflictions are rateable for disability according to the Veterans' Administration Schedule for Rating Disabilities (1945 ed.).

The Secretary's memorandum not only directed correction of the nature of plaintiff's retirement to that of disability, but also the date of it, from January 31, 1960, to March 31, 1960. The memorandum further noted that plaintiff was entitled "to disability retired pay effective 31 March 1960."

Accordingly, the Air Force Accounting and Finance Center recomputed plaintiff's pay and paid the difference between active duty pay and retirement pay for the January 31–March 31, 1960, period. Also refunded were certain deductions taken which are not applicable to disability retirement pay. However, the Finance Center did not refund income taxes withheld from pay during 1960 to 1968 inclusive. With the refund check was a letter advising plaintiff to inquire of the Internal Revenue Service for "possible tax refund."

Plaintiff filed claims with the IRS for refund of taxes paid, and he received favorable action for the years 1966–68. It is not disputed that disability retirement pay is exempt from United States income taxes. Prince v. United States, 119 F.Supp. 421, 127 Ct.Cl. 612 (1954), Internal Revenue Code of 1954 § 104(a) (4). In the *Prince* case we corrected an officer's record to show his retired pay was for disability, though the Board had refused to do so, and on that basis ordered refund of the taxes applicable to that pay. IRS rejected claims for prior years, however, in the instant case, on the ground that plaintiff had failed to file the claims for refund within the prescribed period of limitation. IRC of 1954 § 6511. That particular defense had not been available to it in *Prince*; there the refund claims were timely. Plaintiff claims the accounting undertaken pursuant to the Correction Board action should have included the tax

withholding from the exempt income for the years 1960–65.

Defendant argues that the position taken by the Internal Revenue Service is fully supported by the tax laws and that it fashioned all the relief the IRS is entitled and empowered to give. Plaintiff agrees. There is no argument with the action taken by the Service. Plaintiff's counsel also disavowed or waived in open court the interest that would be automatically added in case of a tax refund. IRC of 1954 § 6611. The issue is whether effectuating the relief, with regard to withheld taxes, as fashioned under the Secretary's directive, is wholly within the province of the Internal Revenue Service and Code or whether plaintiff may seek relief elsewhere, i. e., here in this court. The issue, otherwise stated, seems to be whether this is a suit for refund of taxes or a suit to effectuate in full the administrative remedy allowed under 10 U.S.C. § 1552. Defendant insists that it is solely the former; plaintiff argues for the latter.

We agree with the Government's assertion that the deductions for withholding were *at the time* clearly in accordance with the statutes and were fully legal actions, but hold that the Board undertook to change the pecuniary consequences of the Air Force's earlier position with regard to plaintiff's retirement. From the documents evidencing the Board's and the Secretary's actions in changing plaintiff's retirement status to that of disability, it is a reasonable interpretation that the Board intended for plaintiff to get the tax benefit of service-connected disability retirement. It is also clear that the Board contemplated that he would receive *full* benefit, not merely prospective tax relief. The memorandum from the Assistant Secretary of the Air Force, dated November 7, 1969, in paragraph 2, recites that plaintiff's "name was placed on the Permanent Disability Retired List, *with entitlement to disability retired pay effective 31 March 1960*." (Emphasis supplied.) In paragraph 3, the memorandum directs that "[a]ll necessary and

appropriate action be taken in consonance with this directive."

■ It is universally agreed that the primary advantage of receiving disability retirement pay over retirement pay based on years of service is the exemption of the former from taxation. 10 U.S.C. § 1552 endows the Secretary with authority to correct a serviceman's record and to pay "a claim for the loss of pay, allowances, compensation, emoluments, or *other pecuniary benefits* * * * if, as a result of correcting a record * * *, the amount is found to be due the claimant * * *" § 1552(c). (Emphasis supplied.) No one will seriously argue that prospective shelter of income from taxation is not a pecuniary benefit to plaintiff flowing from the Board's decision on the nature of his retirement. Plaintiff's retirement income is currently, and will continue to be, tax-exempt—a substantial pecuniary benefit. Had he been adjudged retired for disability at the time of his separation from the service, this tax-exempt status of his retirement income would similarly have been a substantial pecuniary benefit. It is this benefit which we think the Board and the Secretary intended to include in the relief granted, but it cannot come to plaintiff if the Finance Center was right in refusing to adjust for the involved withholdings and in referring him to the IRS which lacked authority to do so, except for 1966–68.

The answer to the question this case poses is found, we think, in the origin and purposes of the statute, 10 U.S.C. § 1552, under which plaintiff seeks relief. It came into being as part of the Legislative Reorganization Act of 1946, 60 Stat. 837. In separate provisions, the Congress prohibited the future introduction of private bills to correct military and naval records (Sec. 131), and authorized the Service Secretaries, acting through civilian boards, to correct military and naval records against error and injustice (Sec. 207). In a landmark opinion Attorney General Tom Clark pointed out that the intention of Congress was "to free itself from the burden of dealing with such matters by private bills and to provide a method for their disposition by administrative action." 40 Op.Atty.Gen. 504, 505 (1947). To determine what corrections were intended, he went on to use the technique of ascertaining what kinds of corrections of military records had historically been dealt with by private bills. Among these were corrections of the retirements of soldiers and sailors. Such matters were clearly among those which Congress intended to divest itself of, and to have the new statutory boards thenceforward be responsible for. There can be and is no question that the correction of a record to show a retirement for disability, in order to secure tax exemption, is within Board jurisdiction. Prince v. United States, *supra.*

The 1946 legislation did not expressly provide for payments to reflect the corrected records, and the present § 1552(c), which does this, was added in 1951. 65 Stat. 655. An able decision by Acting Comptroller General Weitzel, 34 Comp.Gen. 7 (1954), holds that once the decision is made to correct a record, the grant of monetary relief is not discretionary but automatic. In this connection, he refers to an embittered challenge to the constitutionality of the entire Act on the ground it is an unconstitutional delegation of legislative power. Harris, Some Principles Governing the Board for Correction of Naval Records, 42 Georgetown L.J. p. 210 (1954). The Acting Comptroller says that to avoid constitutional questions, the grant of discretion must end with the record correction. The serviceman must be awarded the payment that "would have been due if the error or injustice had not existed originally." At p. 12, quoting legislative history. If he does not receive this he can apply to the General Accounting Office or the Court of Claims "for consideration and settlement of his claim against the United States." At p. 10. This role attributed us by the Controller General we have assumed many times, of which *Prince* again stands as an example. Another is

Egan v. United States, 158 F.Supp. 377, 141 Ct.Cl. 1 (1958), and we do the same thing again in Bates v. United States, Ct.Cl., 453 F.2d 1382, decided today.

In Hamrick v. United States, 96 F. Supp. 940, 120 Ct.Cl. 17 (1951), we used language that parallels the Comptroller General's position. A retiring Board erroneously found an officer not disabled as a result of service and thus not entitled to retirement for disability pay. A Retiring Review Board found his disability to be service connected, but fashioned only partial relief. On review, this court said:

> * * *. But full correction of the error would require plaintiff's *being put in the same position* he would be in *had the erroneous determination not been made.* * * * A process of review is effective only to the extent that it is followed by action which removes the consequences of error. * * * We would dilute the effectiveness of this remedial statute [similar to the statute here] by a holding that this plaintiff is entitled to *something less* than he would have had if the erroneous determination had not been made. 96 F.Supp. at 943, 120 Ct.Cl. at 25–26. (Emphasis supplied.)

It follows that all we have to do here, the record correction being unchallenged, is to determine the difference between the retirement pay Colonel Ray received and the pay he would have received if the record had been correct from the beginning. There is nothing specially sacred about the fact that the difference is due to tax withholdings. In Prince v. United States, 119 F.Supp. at 423–424, 127 Ct.Cl. at 617, we said:

> The Government urges that statutes granting exemptions from taxation are to be narrowly construed. That doctrine seems to us to have nothing to do with this case. There is no question of the interpretation of a tax statute. If we are right in our conclusion as to how equity should regard the facts, there can be no doubt concerning the application of the tax statute.

The Government argues that plaintiff has not established his status until the Board acted. Proof of status is the admitted condition precedent for recovery of overpayment of taxes under the Internal Revenue Code § 6511, *supra,* but as we view this case, proof of status before the Board is the triggering incident which entitles the claimant to all the relief the Service (Air Force) is authorized to grant in order to make him whole. It is the Air Force which erroneously withheld from his retirement pay amounts approximately equal to his supposed tax liability, not the IRS. The Tax Division appeared before us as counsel for defendant, but this did not transform the nature of the case. It is the Air Force, then, which is liable to plaintiff for the monies it erroneously exposed to taxation. Plaintiff has consistently sought to hold the Air Force accountable since the outset of this case in 1965. Plaintiff might have filed protective claims for refund with the IRS as the withholdings were made, but his failure to do so is itself another consequence of the Air Force's original error. He did prove *entitlement* before the Board and its recommendations clearly reflected the retroactive nature of that *entitlement* in its findings and the consequent directive of the Secretary, quoted *supra.*

The defendant suggests that the withholdings, upon being paid over to the IRS, were credits against all of plaintiff's income tax liabilities, not just those attributable to his retired pay. It may be that some of the withholdings were credited to taxes, if any, on income other than retired pay. We do not think it necessary to go into this at this time. As made by the Air Force, the withholdings were applicable to retired pay. If plaintiff receives a double benefit by having withholdings refunded, although part of them served to satisfy other valid tax liabilities, the IRS would seem not to be without a remedy. IRC of 1954, § 111; *cf.* Alice Phelan Sullivan

Corp. v. United States, 381 F.2d 399, 180 Ct.Cl. 659 (1967). Apart from interest, the amounts recovered here may be more, or less, or the same, as the payment the IRS would have made if the years 1960–65 had been kept open before it. The record herein reflects the amounts reported as taxable income during the periods involved, the corrected amounts, and the tax withheld. We presume it is a mere arithmetical calculation to determine how much withholding was excessive because applicable to retired disability pay.

Having in view the opinions already referred to, as to constitutionality, we do not intend to intimate any roving delegation to us or anyone else, to remedy, the indirect consequences of an erroneous record. These might at times be staggering, as in the chilling Egan v. United States, *supra,* where the plaintiff was discharged as disabled on a false finding of insanity, yet even in Egan's case we made, as we were asked to make, no award beyond lost pay. It is simply a matter of correcting the pay account between the serviceman and the United States. Since this is not a claim for refund of taxes paid, but for "pecuniary benefits" wrongfully denied, cases cited by defendant are not in point. Kellogg-Citizens National Bank of Green Bay, Wisconsin v. United States, 330 F. 2d 635, 165 Ct.Cl. 452 (1964), involved a claim for excess estate taxes paid although subsequent events gave rise to possible deductions. The court held that plaintiff had not preserved his claim pursuant to the Internal Revenue Code. Here, since plaintiff is not claiming under the Code, he need not preserve his claim according to its provisions.

■ The mere fact that plaintiff submitted claims for refunds with the Internal Revenue Service *as directed by the Finance Center* does not convert his claim into one for overpayment of taxes.

Defendant cites King v. United States, 390 F.2d 894, 182 Ct.Cl. 631 (1968), rev'd, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed. 2d 52, vacated by order, 189 Ct.Cl. 563 (1969), as authority for the proposition that an officer seeking the retroactive tax benefit of disability retirement over retirement for service is basically claiming a refund of taxes paid on retirement pay. In *King,* the Correction Board had refused to change plaintiff's retirement status and the statement was made in that context. Here the Board involved has changed plaintiff's retirement status and plaintiff can therefore say, as King could not, that his right is independent of the tax laws. This difference is allowed for in the Supreme Court's United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), when it is intimated that before King could recover, he had to establish in some forum that his retirement for longevity was legally wrong and that he was entitled to a declaration of his right to have the records changed to show that he was retired for disability. 395 U.S. 3, 89 S.Ct. 1501. *Cf., Prince, supra.* To square our decision with *stare decisis,* it suffices to say we are returning to the trial blazed by that master of the equitable approach, Judge Madden, in the *Prince* decision.

Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted, and judgment is entered for the plaintiff. The amount of the judgment will be determined in proceedings under Rule 131, and will be based on the withholdings made from and applicable to what has been determined to be plaintiff's disability retired pay, for the years 1960 through 1965. These proceedings will not involve an overall reliquidation of plaintiff's income tax liability for those years unless the parties submit stipulated figures on that basis, but the judgment is without prejudice to defendant's rights, if any, to recover any tax windfall that may inure to the plaintiff.