**John G. SULLIVAN and Colleen A. Sullivan, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 98–885T.

United States Court of Federal Claims.

April 14, 2000.

John G. Sullivan and Colleen A. Sullivan, Santa Fe, NM, pro se.

Mary M. Abate and Edward L. Froelich, Court of Federal Claims Section, and Mildred L. Seidman, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., attorneys of record for the defendant.

## OPINION

HORN, Judge.

The court considers defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction. The defendant contends that the instant case is a tax refund claim, filed after the expiration of the applicable statute of limitations, 26 U.S.C.A. § 6511(a) (West 1989 & Supp.1999). Defendant further contends that, if the plaintiffs are seeking review of an award of disability payments, the Court of Federal Claims does not have jurisdiction because review of decisions by the Board of Veterans Appeals must occur in the United States Court of Appeals for Veterans Claims. See 38 U.S.C. § 511 (1994); 38 U.S.C.A. § 7252 (West 1991 & Supp.1999). Plaintiffs filed an opposition to defendant's motion to dismiss and a cross-motion for summary judgment based on the refusal of the Internal Revenue Service (IRS) to refund taxes paid following an increase in plaintiff John Sullivan's retroactive, military disability rat-

ing by the Veterans Administration.[1] Although not dispositive, plaintiffs categorize their case as a re-compensation for a monetary benefit and specifically state that "[i]t does not constitute a claim for overpaid taxes." Plaintiffs also rely upon 26 U.S.C. § 104(a)(4) (1994); Revenue Ruling 78–161, 1978–1 C.B. 31; and *Ray v. United States*, 197 Ct.Cl. 1, 453 F.2d 754 (1972).

## FACTS

The plaintiffs, John and Colleen Sullivan, reside in Santa Fe, New Mexico. Mr. Sullivan retired from active duty in 1979 based on years of service, having attained the rank of Captain in the United States Navy. The record before the court reflects repeated contacts by Mr. Sullivan with the Veterans Administration in Honolulu, Hawaii, the Department of Veterans Affairs (VA) in New Mexico and the District of Columbia, and the National Board of Veterans' Appeals (NBVA), before which he tried to have his disability rating adjusted upward.

On March 2, 1988, Mr. Sullivan filed a claim with the VA in Honolulu, Hawaii, for compensation due to combat-associated disabilities resulting from his service in Vietnam, specifically, hearing loss in both ears dating back to 1972, an ulcer intermittently treated since 1974, and Post–Traumatic Stress Disorder.[2] Between 1988 and 1996, Mr. Sullivan's rating was adjusted on six occasions, reflecting both increases and decreases in the award amount.[3] The VA did

1. The Department of Veterans Affairs (VA) replaced the Veterans Administration as the agency administering benefits under Title 38 of the United States Code, and also will be referred to as the VA.

2. The section titled "IF YOU CLAIM TO BE TOTALLY DISABLED" was crossed out and not completed on the initial disability rating application submitted by Mr. Sullivan. According to the defendant, these omissions support an inference that Mr. Sullivan initially did not consider his disabilities to be so severe that he was eligible for total disability. Plaintiffs respond that because an interviewer prepared the application, the "blanks" are not indicative of Mr. Sullivan's state of mind, but rather of the interviewer's judgment as to what should be recorded. Neither position is dispositive, nor is the fact that Mr. Sullivan disagreed with his ratings as assessed by an interviewer prior to a finding of 100 percent, necessarily an indicator that error was committed by the government. Regarding a decision as to the extent of disability, the VA should make its decision based on all the facts presented by the physical condition of the claimant, not on a description entered on a form. In fact, 38 C.F.R. § 3.102 states in pertinent part: "It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding ... the degree of disability ... such doubt will be resolved in favor of the claimant." 50 Fed.Reg. 34458 (1985) (codified at 38 C.F.R. § 3.102 (1996)).

3. The disability awards were as follows:

Award one (11/2/88): 30% retroactive to 4/01/88 (initial award)

Award two (12/19/89): 40% retroactive to 4/01/88 (increase of 10%)

Award three (Form prepared on 6/22/92; authorization date illegible): 40% retroactive to 6/01/92 (% steady, retroactivity shortened by 4 years, 2 months) 20% retroactive to 9/01/92 (decrease of 20%, 3 months added to retroactivity)

Award four (7/5/94): 20% retroactive to 7/01/94 (% steady, retroactivity shortened by 22 months)

Award five (Form prepared on 6/22/95; authorization date illegible): 50% retroactive to 4/01/88 (increase of 30%, 6 years, 3 months. added to retroactivity) 40% retroactive to 9/01/92 (decrease of 10%, retroactivity shortened by 4 years, 5 months)

Award six (9/25/96): 100% retroactive to 4/01/88 (increase of 60%, retroactive to initial award date)

(Some of the dates are the best legible dates extracted from the records provided to the court, which include some difficult to read entries.) Awards Three and Five indicate a mixed award. For tax purposes, an award of this type is prorated according to the percentages and assessed accordingly; this schema accounts, for example, for the IRS recognizing the $355.00 due the Sullivans to reflect the 10/28/96 receipt of their amended returns, i.e. permitting the amount equal to a 100 percent award retroactive to three years prior to the date the Sullivans' amended returns were received by the IRS in the Austin

not find his condition constant; both the award amount and the retroactive dates to which the VA deemed that the percentages applied was changed six times in eight years. Mr. Sullivan was not in agreement with his rating in the eight-year interval until he was awarded a 100 percent disability rating. Three of the occasions upon which Mr. Sullivan's disability percentage changed were pursuant to his appeals from initial determinations by the VA Regional Office, following remands by the VA in Washington, D.C., to the regional board in New Mexico with instructions to increase his disability rating.

Each time the VA awarded Mr. Sullivan a new rating, the Sullivans took advantage of the then-current award level when filing their next joint income tax return, attaching Revenue Ruling 78–161, the authority providing that military disability payments fall under the aegis of 26 U.S.C. § 104(a)(4) of the Internal Revenue Code (I.R.C.) and, thus, are not required to be included in gross income. Plaintiffs, however, did not file a protective claim for a possible 100 percent disability in the future pursuant to 26 U.S.C. § 6514 (1994)[4] on any of the occasions when they filed with the IRS claiming a credit for a revised disability rating. Upon his sixth and final award dated September 25, 1996, Mr. Sullivan received a 100 percent disability rating from the VA, which stated that it was retroactive to April 1, 1988, the date of his initial award. Again, the Sullivans amended their tax returns, attaching Rev. Rul. 78–161, but on this occasion the filed-for credit spanned the years 1988 through 1996, and the plaintiffs claimed a reimbursement of taxes already paid for what they claimed should retroactively be considered tax-free disability compensation.

The IRS office in Austin, Texas received the amended returns on October 28, 1996. In a letter dated November 22, 1996 from the IRS, the plaintiffs were informed of the forthcoming payment to them of arrearage and interest in the amount of $18,660.20 to reflect their claims for the years 1993 to 1995, but that the claims for tax years 1988 through 1992 were completely disallowed with the following explanation:

> This letter is your legal notice that we have disallowed your claim(s). We can't allow your claim(s) for refund or credit for the period(s) shown above for the reason(s) listed below.
>
> You filed your claim for credit or refund more than 3 years after the return due date, including any filing extension you requested for this return. The law states that we can't refund or credit tax to you if you paid it more than 3 years before the date you filed the claim. We consider withheld tax, estimated tax, or earned income credit as paid on the return due date.
>
> Revenue Ruling 78–161 applies to only those years not closed by the statutes of limitations.

The November 22, 1996 letter from the IRS also informed plaintiffs of Mr. Sullivan's right to appeal the decision, with specific directions on how to do so.

In response to the Sullivan's appeal of the November 22, 1996 decision, in a letter dated January 14, 1997, the IRS did approve a partial credit of $355.00, the amount of taxes paid from October 28, 1992 through December 31, 1992. This amount resulted from prorating paid taxes to reflect Mr. Sullivan's retroactive 100 percent disability rating, ap-

---

Office. Although the 50 percent award on or about 6/22/95 was retroactive to 4/01/88, the record does not support the inference that Mr. Sullivan filed a claim, protective or otherwise, for the reimbursement of taxes thereon, as he did with the 1996 award of 100 percent retroactive to 4/01/88, which is the matter currently at issue. The court also notes, although not at issue in this case, that on the face of Award Five there appears an unusual handwritten entry which states "Loss of spouse 9/01/92," given the subsequent filing of joint returns and the signature of Colleen Sullivan on the complaint before this court.

4. 26 U.S.C. § 6514 provides in pertinent part:

> **§ 6514. Credits or refunds after period of limitation**
> **(a) Credits or refunds after period of limitation.**—A refund of any portion of an internal revenue tax shall be considered erroneous and a credit of any such portion shall be considered void—
> **(1) Expiration of period for filing claim.**—If made after the expiration date of the period of limitation for filing claim therefor, unless within such period claim was filed;

parently based upon the 1040X amended joint returns filed on October 28, 1996.

On February 12, 1997, Mr. and Mrs. Sullivan sent a letter to the IRS appealing the disallowed years 1988 to 1991 and the disallowed portion of 1992. A meeting was held with an IRS appeals officer who maintained the IRS position. The Sullivans received a final letter from the IRS on July 22, 1997 indicating that their case had been closed, and advising plaintiffs of their right to appeal the IRS determination. The plaintiffs, therefore, filed their complaint in this court for "monetary entitlement that was awarded by the United States government in September 1996," when the VA awarded John Sullivan a 100 percent disability rating.

The plaintiffs' initial argument focused upon 38 U.S.C.A. § 5110 as a "statutory basis for tolling IRC 6511," and Revenue Ruling 78–161 (addressing the applicability of *Strickland v. Comm'r of Internal Revenue*, 540 F.2d 1196 (4th Cir.1976)), but, in subsequent motions, the plaintiffs expanded their argument also to rely on the reasoning in *Ray v. United States*, 197 Ct.Cl. 1, 453 F.2d 754 (1972).

For the reasons discussed more fully below, plaintiffs' cross-motion for summary judgment is denied, and the defendant's motion to dismiss is granted.

### DISCUSSION

The defendant has filed a motion to dismiss pursuant to Rules 12(b)(1) of the Rules of the United States Court of Federal Claims for lack of subject matter jurisdiction. Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, or on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.1993), *reh'g denied* (1993); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991).

Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). A plaintiff must establish jurisdiction by a preponderance of the evi-

dence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed. Cir.1996). When construing the pleadings pursuant to a motion to dismiss, the court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Son Broadcasting, Inc. v. United States*, 42 Fed. Cl. 532, 537 (1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)).

Pursuant to RCFC 8(a)(1) and the Federal Rules of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir. 1997). *Pro se* plaintiffs can be held to less stringent standards than formal pleadings drafted by lawyers. *Boyle v. United States*, 44 Fed.Cl. 60 (1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972)), *aff'd*, 200 F.3d 1369 (Fed.Cir.2000). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

When deciding on a motion to dismiss based on either lack of subject matter jurisdiction or failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). If a defendant challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint

but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Development Corp. v. United States,* 31 Fed.Cl. 399, 404–05 (1994). The court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. *Indium Corp. of America v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C.A. § 1491 (West 1994 & Supp.1998). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

■ 28 U.S.C.A. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law. *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of tradi-

tional sovereign immunity "cannot be implied but must be unequivocally expressed." *Saraco v. United States,* 61 F.3d 863, 864 (Fed. Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

■ The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, "it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *see also Saraco v. United States,* 61 F.3d at 865 (citing *Zumerling v. Devine,* 769 F.2d 745, 749 (Fed.Cir.1985)) (citing *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948); *see also United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. For claims founded on a statute or regulation to be successful, "the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009 (1967)); *see also Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g denied* (1997).

The defendant contends that this court does not have jurisdiction to consider plaintiffs' claim because the plaintiffs filed amended tax returns based upon a military disability rating of 100 percent awarded in 1996 for tax years 1988–1991 and part of 1992, following the expiration of the time from which the applicable three-year statute of limitations started to run pursuant to 26 U.S.C.A. § 6511(a) (West 1989 & Supp.1999).[5] Ac-

---

5. The provisions of 26 U.S.C.A. § 6511(a) state:

   **§ 6511. Limitations on credit or refund**

   **(a) Period of limitation on filing claim.—** Claim for credit or refund of an overpayment

cording to the defendant, the IRS acted properly when it invoked the three-year statute of limitations bar which resulted in denial of all of plaintiffs' 1996 refund claims for the years 1988–1991 and part of 1992. The plaintiffs assert, however, that theirs is not a tax refund claim, but a request to "fully effectuate" the administrative grant of increased disability compensation, and that this court has jurisdiction to do so under the Tucker Act, 28 U.S.C.A. § 1491. The plaintiffs also assert that a reading of Revenue Ruling 78–161, and *Strickland v. Commissioner,* 540 F.2d 1196, or, in the alternative, adherence to the reasoning in *Ray v. United States,* 197 Ct.Cl. 1, 453 F.2d 754 (1972) and *Blum v. United States,* 227 Ct.Cl. 555, 1981 WL 21399 (1981), supports the plaintiffs' notion that the statute of limitations barring claims older than three years is inapplicable to the plaintiffs' case.

■ As in any case of statutory construction, our analysis begins with "the language of the statute." *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (quoting *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)). Where the statutory language provides a clear answer, the analysis ends there as well. *Id.* (citing *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)); *see also Van Wersch v. Dep't of Health and Human Services,* 197 F.3d 1144, 1148 (Fed.Cir.1999).

■ The conflict between the plaintiff and the defendant regarding the interpretation of the statute of limitations must be resolved in accordance with accepted rules of statutory construction. If a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Dep't of Commerce,* 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct.

1278, 6 L.Ed.2d 575 (1961), *reh'g denied,* 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)).

■ Ordinarily, an unambiguous statute, or one in which the plain meaning is clear from the words themselves, is conclusive. *J.M. Huber Corp. v. United States,* 27 Fed. Cl. 659, 664 (1993) (quoting *Madison Galleries Ltd. v. United States,* 870 F.2d 627, 629–30 (Fed.Cir.1989) (citing *Burlington Northern R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987))); *see also Reid v. Dep't of Commerce,* 793 F.2d at 281–82; *accord Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 788 (Fed.Cir.1988) ("It is a general rule of statutory construction that where Congress has clearly stated its intent in the language of a statute, a court should not inquire further."), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). The plain meaning rule "tells a court what *not* to look at—legislative debates, committee reports, newspaper commentary.... The meaning of the law is what the words say it is." *UNR Industries, Inc. v. United States,* 911 F.2d 654, 662 (Fed.Cir.1990) (emphasis in original).

■ The applicable statute of limitations, 26 U.S.C.A. § 6511(a), plainly states that the period of limitation of filing a claim is three years from the time a return was filed, or two years from the time the tax was paid. Plaintiffs' attempt to re-characterize their claims not as a tax refund case, but rather as "a suit to acquire the full benefit of the entitlement awarded under Title 38 of the United States Code to plaintiff John G. Sullivan, by the Department of Veterans Affairs on September 25, 1996," or as a suit to claim full effectuation of "pecuniary benefits" does not permit plaintiffs to evade the effect of the clear and applicable statute of limitations contained in 26 U.S.C.A. § 6511(a).[6] More-

---

of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

6. Plaintiffs argue that it is unfair to treat military retirees with many years of service less well than those who leave the service on disability prior to having served sufficient years to receive a pension. Lump sum awards are given to veterans who do not retire from the military for years of service, but are honorably discharged because of their disability. The purpose behind the differentiation is that veterans receiving retired pay for

over, the statute of limitations included in 26 U.S.C.A. § 6511 applies equally to a tax refund or a tax credit. Plaintiffs' invocation of 38 U.S.C. § 1110 and 38 U.S.C.A. § 5110 does not provide them with separate and independent money-mandating jurisdiction to distinguish plaintiffs' case from the tax refund case before the court, or provide a statutory basis for tolling 26 U.S.C.A. § 6511.

Plaintiffs' reliance on 38 U.S.C. § 1110 is based on what they describe as the "imperative wording" of the statute, which they argue provides independent relief to plaintiffs:

> For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own

willful misconduct or abuse of alcohol or drugs.

38 U.S.C. § 1110. Although 38 U.S.C. § 1110 provides that the United States will compensate disabled veterans, it does not state that they will be paid in accordance with their own assessment as to the appropriate disability level.

Moreover, to the extent the plaintiffs are complaining that their desired 100 percent rating was not awarded per Mr. Sullivan's previous claims and appeals to the VA, this court is without jurisdiction to review those benefit-entitlement determinations by the VA, which is solely vested in the United States Court of Veterans Appeals *See* 38 U.S.C. § 511 (1994);[7] 38 U.S.C.A. § 7104 (West 1991 & Supp.1999);[8] 38 U.S.C.A. § 7252 (West 1991 & Supp.1999);[9] *accord Davis v. United States,* 36 Fed.Cl. 556, 559 (1996); *Zuspann v. Brown,* 60 F.3d 1156, 1156, 1158–59 (5th Cir.1995), *cert. denied,* 516 U.S. 1111, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996). Under the facts of this case, however, plaintiffs also have not offered evidence that they could sustain the burden of proving that the VA engaged in misconduct or even made mistakes in their ongoing assessments of plaintiff's disability status.

---

longevity of service must pay taxes on the retired pay, as is the case with any form of income not specifically exempted by the tax code. *See* 26 U.S.C. § 61(a) (1994); *see also Kellogg–Citizens National Bank v. United States,* 165 Ct.Cl. 452, 458 n. 4, 330 F.2d 635 (1964). Retirees for years of service only receive tax-free payments to the extent of their disability awards. Veterans not receiving retired pay, but who are given a lump sum disability award upon leaving the service, are not taxed on that lump sum disability award. To the extent that the plaintiffs are making a fairness argument, their remedy is at the discretion of Congress, not by leave of this court. The tax code does not include an accommodating exception to the applicable statute of limitations, 26 U.S.C.A. § 6511.

7.  38 U.S.C. § 511(a) provides:

§ 511. Decisions of the Secretary; finality
(a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be re-

viewed by any other official or by any court, whether by action of mandamus or otherwise.

8.  38 U.S.C.A. § 7104 provides:

§ 7104. Jurisdiction of the Board
(a) All questions in a matter which under section 211(a) of this title is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary. Final decisions on such appeals shall be made by the Board. The Board shall decide any such appeal only after affording the claimant an opportunity for a hearing. Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation.
[Section 211(a) of Title 38 was repealed by Pub.L. 102–83, § 2(a), Aug. 6, 1991, 105 Stat. 378; see section 511 of Title 38.]

9.  38 U.S.C.A. § 7252 states:

§ 7252. Jurisdiction; finality of decisions
(a) The Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals.

At issue in this case is not whether the plaintiff, John Sullivan, should receive disability payments, but rather whether the statute of limitations included in 26 U.S.C.A. § 6511 bars him from claiming a refund for the taxes already paid after expiration of the statute of limitations, following a more recent modification of his disability rating by the VA. Although 38 U.S.C.A. § 5110 (West 1991) addresses retroactivity [10], the focus of the statute, which is found in a title of the United States Code devoted to Veterans Benefits, does not address retroactivity under the tax code, which is found in Title 26. The plaintiffs have not cited to any specific language in Title 38 which overrides the tax code provisions regarding the applicable statute of limitations in tax cases.

Veterans who receive benefits, whether in the "lump sum" or as monthly payments, must file annual tax returns. If any portion of those benefits is eligible for tax free status they may claim exempt status for that portion pursuant to 26 U.S.C. § 104(a)(4). [11] The requirement to file annually applies also to veterans, such as plaintiff John Sullivan, whose disability percentages may be in flux or ultimately readjusted. Otherwise, taxpayers who disagree with and appeal their disability ratings could avoid payment of taxes while waiting for adjustment of their disability ratings, creating a deferral neither intended nor provided by Congress in the tax code. Having complied with the requirement to submit annual tax filings, plaintiffs are constrained by the statute of limitations contained in 26 U.S.C.A. § 6511 when making refund or credit claims.

Plaintiffs make the argument that theirs is "a case seeking equitable estoppel because of the Government's failure to act timely denying plaintiffs the benefit promised by Congress." The plaintiffs raise equitable estoppel based on the notion that the VA was dilatory in the final disposition of Mr. Sullivan's claim, taking eight years to give him the 100 percent rating he desired and felt he deserved.

The doctrine of equitable estoppel is a remedy by which a party may be precluded, by a party's own act or omission, from asserting a right to which it otherwise would have been entitled. *See Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). The traditional elements for asserting estoppel against the government in the context of a contract dispute are: "(1) the government must know the true facts; (2) the government must intend that its conduct be acted on or must so act that the [party] asserting the estoppel has a right to believe it so intended; (3) the [party] must be ignorant of the true facts; and (4) the [party] must rely on the government's conduct to his injury." *JANA, Inc. v. United States,* 936 F.2d 1265, 1270 (Fed.Cir.1991), *cert. denied,* 502 U.S. 1030, 112 S.Ct. 869, 116 L.Ed.2d 775 (1992) (citing *American Electronic Labs., Inc. v. United States,* 774 F.2d 1110, 1113 (Fed.Cir.1985); *Emeco Indus. v. United States,* 202 Ct.Cl. 1006, 485 F.2d 652, 657 (1973)). To claim estoppel, a party must have relied on an "adversary's conduct 'in such a manner as to change his position for the worse' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was mis-

10. 38 U.S.C.A. § 5110 states:

§ 5110. Effective dates of awards

(a) Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

11. 26 U.S.C. § 104 provides in pertinent part:

§ 104. Compensation for injuries or sickness

(a) In general.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—

* * * * * *

(4) amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country or in the Coast and Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 808 of the Foreign Service Act of 1980;

leading." *See Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. at 59, 104 S.Ct. 2218 (quoting 3 J. Pomeroy, EQUITY JURISPRUDENCE § 805, at 192 (S. Symons ed.1941)).

■ Although the United States Supreme Court and other courts have left open the narrow possibility that under limited circumstances and in cases of affirmative misconduct by a government agent an estoppel claim against the government may succeed,[12] thus far, federal courts generally have done so only while rejecting, for a variety of reasons, each attempt at application of the estoppel theory in the particular case then before the court. *See, e.g., Heckler v. Community Health Servs.,* 467 U.S. at 66, 104 S.Ct. 2218 (holding that the detriment faced was not so severe or imposed in such an unfair way as to invoke the estoppel doctrine); *Office of Personnel Management v. Richmond,* 496 U.S. 414, 434, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (holding that the courts cannot estop the Constitution and, therefore, there can be no "estoppel by a claimant seeking public funds"); *Henry v. United States,* 870 F.2d 634, 637 (Fed.Cir. 1989) (holding that the oral advice given by an IRS agent did not constitute affirmative misconduct because the element of reasonable reliance was absent); *Hanson v. Office of Personnel Management,* 833 F.2d 1568, 1569 (Fed.Cir.1987) (holding that misrepresentations made by Office Personnel Management and Office of Workers Compensation Programs officials to a benefits recipient did not constitute affirmative misconduct because the officials acted in good faith on the basis of the currently accepted reading of the statute). Plaintiffs in the case at bar have neither alleged fraud not demonstrated misconduct on the part of the government.

■ In *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), the United States Supreme Court left no doubt that in tax refund claims "Congress did not intend the 'equitable tolling' doctrine to apply to § 6511's time limitations." *Id.* at 354, 117 S.Ct. 849. As grounds for this clear conclusion, Justice Breyer, writing for the Court, stated,

> In addition, § 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include "equitable tolling."

\* \* \* \* \* \*

> To read an "equitable tolling" provision into these provisions, one would have to assume an implied exception for tolling virtually every time a number appears. To do so would work a kind of linguistic havoc. Moreover, such an interpretation would require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery—a kind of tolling for which we have found no direct precedent. Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us the Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute that it wrote. There are no counter-indications. Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities.

\* \* \* \* \* \*

The nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system. At the least it tells us that Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires.

*United States v. Brockamp,* 519 U.S. at 351–53, 117 S.Ct. 849.

---

**12.** Under the *Heckler* test and subsequent definitions of the elements of estoppel, without affirmative misconduct on the part of the government, there can be no equitable estoppel against the government. *See Westinghouse Electric Corp. v. United States,* 41 Fed.Cl. 229, 240–241 (1998); *see also Hanson v. Office of Personnel Management,* 833 F.2d 1568, 1569 (Fed.Cir.1987).

Recently, in *Marcinkowsky v. United States*, the United States Court of Appeals for the Federal Circuit reaffirmed the instruction in *Brockamp* that the tax law does not envision case-specific exceptions to the applicable statute of limitations in order to take individualized equitable considerations into account. *Marcinkowsky v. United States*, 206 F.3d 1419, 1421–22 (Fed.Cir. 2000). *See also United States v. Brockamp*, 519 U.S. at 352, 117 S.Ct. 849.

The policy and theory behind the unequivocal and unwavering application of the tax code statute of limitations has remained unchanged for over fifty years. For example, in *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946), the United States Supreme Court, through Justice Jackson, stated:

It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

We have had recent occasion to point out the reason and the character of such limitation statutes. "Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to

prosecute them." *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–[4]9[, 64 S.Ct. 582, 88 L.Ed. 788 (1944).] "They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable [avoidable] and unavoidable delay. They have come into the law not through the judicial process but through legislation." *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314[, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945).]

*Rothensies v. Electric Storage Battery Co.*, 329 U.S. at 301–02, 67 S.Ct. 271.

As indicated above, the plaintiffs also ask the court to consider their case in light of *Strickland v. Commissioner*, 540 F.2d 1196, and Revenue Ruling 78–161. There is no question that Revenue Ruling 78–161 reflects the law in force: gross income does not include disability payments. The Sullivans' reliance, however, upon Revenue Ruling 78–161 and *Strickland* (holding that under the facts in *Strickland* a retroactive determination of eligibility by the VA allowed a tax adjustment) is unavailing. *Id.* at 1199. A review of the facts in *Strickland* reveals no 26 U.S.C.A. § 6511 statute of limitations issue with respect to the claim presented. Therefore, *Strickland* stands for the general proposition that disability awards are not taxable as gross income and that, in the appropriate circumstances, veterans may rely upon a retroactive award of the VA, for an adjustment in their taxable liability. The *Strickland* case, however, does not reach or address the question of how far back such adjustments may be made or how to adjust taxable income in the case of an expired statute of limitations under 26 U.S.C.A. § 6511.

In its brief filed with this court, the defendant refers to *Joosten v. United States*, 96–2 T.C.M. (CCH) ¶ 50,393 (June 5, 1996) and *Murphy v. United States*, 1996 WL 34657 (4th Cir.1996).[13] In *Joosten*, and in the instant case, the plaintiffs attempt to analogize

13. *Joosten* is a memorandum opinion emanating from United States District Court in New Jersey. *Murphy* is an unpublished, non-precedential Table opinion, cited to the court by the defendant, in which the Fourth Circuit suggested, in reliance on language in *United States v. Kales*, 314

U.S. 186, 195, 62 S.Ct. 214, 86 L.Ed. 132 (1941), that *Murphy* might have avoided the statute of limitations bar by filing a protective claim to preserve her rights if she were to be awarded tax-exempt veterans benefits instead of a taxable pension.

their case to that of *Strickland.* Certainly, there are facial similarities; military personnel (or, in the case of *Joosten,* the widow of a serviceman) having difficulty securing what they believe to be full entitlement from the IRS. The Sullivans, however, face the same impediment as identified by the United States District Court in *Joosten:*

> [T]he plaintiff relies on the Fourth Circuit's opinion in *Strickland v. C.I.R.* ... for the proposition that retroactively awarded, tax-exempt benefits are ... exempt from the limitations set forth in I.R.C. § 6511. That decision, however, merely stands for the proposition that tax-exempt veterans benefits can be awarded retroactively, assuming that there is a proper waiver of duplicative benefits. The *Strickland* court did not address the issue of limitations imposed on retroactively rewarded benefits by I.R.C. § 6511. The same court, moreover, recently rejected plaintiff's theory in the *Murphy* decision.

*Id.* at ¶ 50,393. In rejecting the plaintiff's claim, the *Joosten* decision stated:

> Accordingly, her argument that the retroactivity of the award supersedes I.R.C. § 6511, because otherwise the tax exemption for veterans benefits would be a "dead letter," is unsound. The result here is not "bizarre," as the plaintiff contends in her brief. Rather, the result is consistent with the sound policies of repose and finality that pervade the Internal Revenue Code. Individual pleas of equity should not be permitted to override the Congressionally-imposed limits that ensure predictable consequences for all taxpayers.... Unlike the federal statutes that have been found subject to equitable tolling, the tax laws do not have a broad remedial purpose, nor are they drafted to be especially protective of plaintiffs. To the contrary, the tax laws are designed to accomplish the efficient and even-handed collection of revenue from over 200 million taxpayers through a series of technical provisions.

*Id.* at ¶ 50,393.

The United States Supreme Court has utilized both case law and the Federal Rules of Civil Procedure to explain the manner in which a protective claim can assert potential future rights associated with tax refunds, in that case attendant upon the valuation of stock holdings:

> [R]espondent had originally stated her claim in the future tense, saying that in the event of departmental revision of the valuation of the stock she "will insist" on a higher valuation and "will claim the right to a refund." ... Such a use of the future tense in stating a claim may, with due regard to the circumstances of making it, rightly be taken as an assertion of a present right. (Citations omitted). Here the claim is alternative and contingent upon future events. The statement that upon the happening of the contingency the claim will be prosecuted is not inconsistent with the present assertion of it. It is indeed an appropriate, if not the necessary, phraseology for the present assertion of an alternative claim with respect to which a taxpayer, in his presentation of an informal tax refund claim, should be in no less favorable position than the plaintiff in a suit at law who is permitted to plead his cause of action in the alternative. See Rule 8(e) of the Federal Rules of Civil Procedure; *United States v. Richards,* 79 F.2d 797 [(6th Cir.1935), *cert. denied,* 297 U.S. 718, 56 S.Ct. 595, 80 L.Ed. 1003 (1936).]

*United States v. Kales,* 314 U.S. 186, 195–96, 62 S.Ct. 214, 86 L.Ed. 132 (1941).

The Sullivans argue that their claim is based upon the non-taxable nature of his disability income. Although we admit the average citizen might not think to do so, under the *Kales* reasoning, in each instance when the Sullivans were filing tax returns and taking deductions for less than the 100 percent disability they felt Mr. Sullivan merited, plaintiffs could have announced their intention to claim a greater exemption in the future, transforming the joint returns also into protective assertions of present rights, should the amounts of the forward-looking claim become a reality. Having filed no timely protective claim pursuant to 26 U.S.C. § 6514(a)(1), the Sullivans are bound by the stated terms of 26 U.S.C.A. § 6511.

In support of their claims, the plaintiffs also attempt to rely on *Ray v. United States,* 197 Ct.Cl. 1, 453 F.2d 754, which was fol-

lowed by *Blum v. United States,* 227 Ct.Cl. 555, 1981 WL 21399 (1981). In *Ray,* an Air Force colonel retired based on length of service and not by reason of physical disability. The Secretary of the Air Force issued a memorandum correcting the stated reason for his retirement to "disability" as well as the date of Colonel Ray's retirement on his service record. Together with the refund check sent to Colonel Ray from the Air Force Accounting and Finance Center was a letter advising him to inquire of the Internal Revenue Service about a possible tax refund. The IRS rejected the colonel's claims for prior years based on an expired statute of limitations. *Ray v. United States,* 197 Ct.Cl. at 4, 453 F.2d 754. The Court of Claims, however, found that:

> [H]ad he been adjudged retired for disability *at the time of his separation from the service,* this tax-exempt status of his retirement income would similarly have been a substantial pecuniary benefit. It is this benefit which we think the Board [Air Force Board for the Correction of Military Records] and the Secretary intended to include in the relief granted, but it cannot come to plaintiff if the Finance Center was right in refusing to adjust for the involved withholdings and in referring him to the IRS which lacked authority to do so, except for 1966–68.

*Id.* at 5–6, 453 F.2d 754 (emphasis added). The court further stated,

> It is the Air Force which erroneously withheld from his retirement pay amounts approximately equal to his supposed tax liability, not the IRS .... Plaintiff has consistently sought to hold the Air Force accountable since the outset of this case in 1965. *Plaintiff might have filed protective claims for refund with the IRS as the withholdings were made, but his failure to do so is itself another consequence of the Air Force's original error.*

*Id.* at 8, 453 F.2d 754 (emphasis added).

*Ray* was followed by *Blum v. United States,* 227 Ct.Cl. 555, 1981 WL 21399 (1981). In *Blum,* the court referred to the *Ray*

reasoning discussed immediately above with approval and refused to dismiss the *pro se* plaintiff's lawsuit challenging a denial of his retirement classification from longevity to disability in order to allow the plaintiff to pursue a decision on the merits. *Blum v. United States,* 227 Ct.Cl. at 557–59.

Cases such as *Ray* and its progeny, which, although dealing with issues of retirement disability awards and tax credits, are distinguishable from the strict application of the statute of limitations in tax refund claims covered by 26 U.S.C.A. § 6511, including the case brought by the Sullivans. The line of cases, such as *Ray,* in which equitable tolling was permitted, involved correction of errors on the part of the military with reference to the serviceperson/plaintiff's military retirement record and status. *See, e.g., Ray v. United States,* 197 Ct.Cl. 1, 453 F.2d 754 (Air Force Board for Correction of Military Records changing the reason for retirement from years of service to disability); *see also Blum,* 227 Ct.Cl. 555 (court denies defendant's motion to dismiss where plaintiff's tax credit case was based on the alleged refusal by the Army Board for Correction of Military Records to properly classify plaintiff's retirement for reasons of disability); *Pride v. United States,* 40 Fed.Cl. 730 (1998) (widow successfully petitioned the Air Force Board for Correction of Military Records to amend her husband's records to reflect her entitlement to a Survivor Benefit Plan annuity fifteen years after his retirement); *French v. United States,* 42 Fed.Cl. 49 (1998) (Army Board for Correction of Military Records changed plaintiff's record to reflect restoration of noncommissioned officer rank and higher back pay relief), *aff'd,* 194 F.3d 1338 (Fed.Cir. 1999).

In *Ray* and its progeny, courts have instructed the IRS, equitably, to take into account remedial action taken by the military (often as a result of actions ordered by the service branch-appropriate Board for Correction of Military Records, as a result of actions filed pursuant to 10 U.S.C. § 1552.) [14] Unlike the plaintiff in *Ray,* regarding whom

---

**14.** 10 U.S.C. § 1552 provides, in pertinent part:
    **§ 1552. Correction of military records: claims incident thereto**

(a)(1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary

the Secretary was asked to and revised an error made by the Air Force on his military service records and retirement status, neither Mr. Sullivan's military records nor retirement status were changed, or are even at issue. The revisions in the record in the instant case occurred as a result of periodic reviews and modifications by the VA of Mr. Sullivan's post-retirement disability status. This ongoing revision by the VA is within the VA's authority and should not be regarded by this court as a correction of an error on the part of the Navy or the VA, but as a further step in the normal practice of the VA to monitor, assess, and reassess the disability status of veterans. Although 38 U.S.C.A. § 5110, titled "Effective dates of awards," speaks to the retroactivity dates of VA disability ratings, this statutory section does not include an exception to the statute of limitations included in 26 U.S.C.A. § 6511.

### CONCLUSION

Although the court can understand why the *pro se*, non-attorney plaintiffs believe

that they are entitled to a refund from the IRS based on Mr. Sullivan's revised VA disability award, the statute of limitations included in 26 U.S.C.A. § 6511 bars their claim. Absent congressional action, this court may not create an exception to 26 U.S.C.A. § 6511 for subsequent revisions to military disability benefits by the VA. Therefore, defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED.** The plaintiffs' complaint is dismissed pursuant to Rule 41(b) of the Court of Federal Claims. The Clerk's Office shall enter judgment consistent with this opinion. Each party shall bear its own costs.

**IT IS SO ORDERED.**

considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be

made by the Secretary acting through boards of civilians of the executive part of that military department.