Duheee, Judge,
delivered the opinion of the court:
The plaintiff, a chief petty officer in the Navy with over 20 years service, sues for back pay from December 1,1954, when he was given a general discharge under honorable conditions, by reason of unsuitability.
Plaintiff asserts that his general discharge was not legal because it was issued in violation of the regulations of the Navy which prescribe the administrative procedure for discharge of enlisted personnel for unsuitability.
Article C-10310 of the Bureau of Personnel Manual of 1948, provides as follows:
(1) The Bureau may authorize or direct the discharge of enlisted personnel for unsuitability. Discharge will be effected for this reason by the Bureau to free the service of persons considered unsuitable because of psychiatric or neurological handicaps, enuresis, personality disorders or defects, or other good and sufficient reason when determined by administrative process.
(2) Commanding officers shall not effect the discharge of enlisted personnel for unsuitability except when specifically authorized or directed by the Bureau. The commanding officer shall refer the case to the Chief of Naval Personnel for decision if he considers that an individual is unsuitable for further retention in the naval service. Prior to recommending the discharge of an individual for unsuitability the commanding officer shall thoroughly investigate the case. The person concerned shall ~be informed of the contemplated action, with the reason therefor, and shall be given an opportunity to submit any signed statement desired in his own behalf. If he does not desire to make a statement at that time an entry to that effect shall be made in his service record and signed by the person concerned. If there is doubt of the existence of a mental or physical disability as the *684 cause for unsuitability, the enlisted person should be brought before a, board of medical survey for a determination of fact. In every case of discharge for unsuitability recommended by a commanding officer a complete statement giving all the circumstances of the case, together with any signed statement from the person concerned, shall be forwarded to the Chief of Naval Personnel. (Emphasis supplied.)
(3) Individuals shall not be recommended for discharge for unsuitability as a punishment or in lieu of a court martial.
On February 23,1954, plaintiff was arrested in California and charged with “child molesting,” a felony under California law. He pleaded not guilty, and the court after trial, reduced the charge and found him guilty of “contributing to the delinquency of a minor,” a misdemeanor, on May 12, 1954. He was thereafter ordered committed to a mental hospital for observation to determine whether or not he was a sexual psychopath. On September 7, 1954, he was found to be a sexual psychopath by the court, which determined that he would benefit from medical treatment. Further criminal proceedings were suspended, and he was committed to a state hospital for psychiatric observation and treatment for an indefinite period.
While at the hospital, his condition was diagnosed by the doctors there as one of “personality trait disturbance, passive aggressive personality,” and it was their opinion that his deviant sexual conduct was the result of this personality trait disturbance. The naval authorities had been promptly notified of plaintiff’s arrest.
It was during this indeterminate period of suspension of criminal proceedings by the California court for further psychiatric observation and treatment of plaintiff before sentence that an Administrative Discharge Board of the Navy recommended that the case “comes within the province of Article C-10310, B.P.M., having demonstrated a definite unsuitability for further retention in the service” and that plaintiff be given a “discharge with general discharge (under honorable conditions) by reason of unsuitability.” The findings of the board also refer to “sexual psychopath” and (erroneously) to “civil charges dismissed.” Plaintiff was *685 thereafter, on December 7,1954, discharged by reason of unsuitability, as recommended by this Administrative Discharge Board.
On January 6, 1955, he was called to the main office of the California mental hospital, where he was still under medical observation and treatment, to sign papers that the Naval Station in Long Beach, California, had sent to the hospital. Included in the papers was a general discharge under honorable conditions, for unsuitability. The only document that he signed was a form which read “I hereby acknowledge receipt of the General Discharge Certificate discharging me from the U.S. Navy on 7 Dec. 1954.”
This was the first and only notice of any kind that plaintiff received .from the Navy as to any discharge proceedings, a month after his actual discharge. In his statement later filed, with the Board for Correction of Naval Records, he stated (and this is not in dispute):
“Nothing was explained to me. I was told to sign the papers and I did.”
Plaintiff’s statement continued:
“I thought that if the discharge was ‘under honorable conditions’ I would be transferred into the Fleet Reserve and draw the retainer which I feel that I have earned by giving the Navy 22 years of honest and devoted service.”
In November 1955, plaintiff was discharged from the state hospital having received maximum benefits from hospitalization, and was returned to Los Angeles Superior Court which officially accepted the charge of contributing to the delinquency of a minor, a misdemeanor, and he was placed on one year’s probation. Plaintiff subsequently applied to the Navy to change the character of his discharge, and to permit his reenlistment, and to transfer to the Fleet Naval Reserve. Upon denial of his application, he then applied to the Board for Correction of Naval Records, and asked that he be allowed to appear before a medical evaluation board to determine his eligibility for retirement instead of a discharge, on evaluation for a service-connected disease and severance pay. Hearing was granted by the correction board. Plaintiff did not attend and presented no witnesses, *686 but submitted a written statement and was represented by counsel wbo argued for the application on the basis of the record before the correction board.
After obtaining an opinion as to plaintiff’s mental condition from the Bureau of Medicine and Surgery, the correction board denied the plaintiff’s relief and decided that no change, correction, or modification was warranted in plaintiff’s record.
There is nothing in the record to indicate that plaintiff was ever “informed of the contemplated action with the reason therefor,” as required by Article C-10810, under which he was discharged. While it appears that after his arrest and commitment to the state hospital for observation in July 1954 (five months before his Navy discharge), plaintiff confided to a doctor there that he expected he would be discharged from the Navy, there is nothing in the record to indicate that he was ever “informed of the contemplated action” by the Navy, or that he was ever given an opportunity “to submit any signed statement desired in his own behalf.” No such statement was made or filed, nor is there any entry in his service record to the effect that plaintiff did not desire to make a statement at that time, as clearly required under Article C-10310. If the regulation had been complied with, the record would show that plaintiff was given notice of the contemplated action. There would be a signed statement by plaintiff in his service record in his own behalf, or to the effect that he did not desire to make any statement. Defendant has replied to this objection by stating that there was no request by plaintiff to make a statement, nor has it been shown that he ever desired to make one. This is hardly an adequate reply, since plaintiff at the time of the discharge proceedings had no notice whatever of the contemplated action, despite the clear requirement for such notice in the regulation.
Defendant also argues that even if plaintiff could prove that he was not afforded the opportunity to make a statement, the failure did not deprive him of any substantial rights, apparently because he had already been convicted of an offense by the civil authorities in California, and was *687 guilty of unauthorized absence because he was being held in confinement by the civil authorities.
The unsuitability for which plaintiff was discharged under honorable conditions was based upon his civil conviction for contributing to the delinquency of a minor, and his confinement in a state hospital as a sexual psychopath. There was no other basis for consideration by the Navy in issuing the general discharge for unsuitability. Under the circumstances, we consider that plaintiff’s procedural rights under the regulation as to notice of the contemplated action and opportunity to submit a signed statement, or to waive this privilege in writing on the record, were substantial procedural rights of plaintiff. He was deprived of these rights by the failure of the naval authorities to comply with this regulation.
Plaintiff was also deprived of another substantial right under the same regulation, C-10310, pertaining to discharge for unsuitability. Section 3 of the regulation provides:
Individuals shall not be recommended for discharge for unsuitability as a punishment or in lieu of court martial.
We must therefore conclude that plaintiff was not discharged for any offense or conviction thereof. The purpose of the discharge for unsuitability, as stated in Section 1 of the regulation is “to free the service of persons considered unsuitable because of psychiatric or neurological handicaps, enuresis, personality disorders or defects, or other good and sufficient reason when determined by administrative process.” This regulation also requires that “prior to recording the discharge of an individual for unsuitability, the commanding officer shall thoroughly investigate the case * * * if there is doubt of the existence of a mental or physical disability as the cause of unsuitability, the enlisted person should be brought before a board of medical survey for a determination of fact.”
Despite the fact that the naval authorities had been informed that plaintiff had been diagnosed as a “sexual psychopath” under California law and knew that plaintiff was undergoing psychiatric observation and treatment in a California mental hospital under a court order, the naval author *688 ities made no independent investigation or inquiry as to the existence of a mental or physical disability as the cause for unsuitability.
On November 2, 1954, a Navy Administrative Discharge Board recommended that plaintiff be given a “General Discharge (under honorable conditions) by reason of unsuitability,” pursuant to Article C-10310 B.P.M. The findings of this board refer to “sexual psychopath” and plaintiff’s detention by the civil authorities.
Plaintiff’s general discharge for “unsuitability” was issued by his commanding officer pursuant to this recommendation and that of the Bureau of Naval Personnel on December 7, 1954, and delivered to plaintiff on January 6, 1955, at the state hospital.
During this entire period it does not appear that any official, doctor, or board of the Navy even saw plaintiff. He was never “brought before a board of medical survey for a determination of fact” as to mental disability, as required by the regulation. There was never any independent Navy investigation or determination as to whether plaintiff had a “mental or physical disability,” despite the fact that the Navy authorities knew that plaintiff was during all this time under psychiatric observation and treatment in a California mental hospital under order of a California court as a “psychopath.”
The position of the defendant as to this apparent procedural hiatus is the same as that taken by the Board for Correction of Military Becords, to whom plaintiff finally applied and requested medical examination for determination of eligibility for retirement for service-connected disease and severance pay. The Government now contends that “there was no reason to believe that plaintiff’s character and behavior disorder were due to a mental or physical disability,” since the records merely showed commitment for observation as a sexual psychopath, which basically was diagnosed as due to a disorder or defect in plaintiff’s personality. In denying plaintiff’s application, the correction board obtained an opinion from the Bureau of Medicine and Surgery, which does not appear to be based on any personal observation and diagnosis of plaintiff. This opinion recites the following *689 conclusions, based entirely upon the California court and hospital record:
“After a period of observation in a California State Hospital following a conviction on a charge of molestation of a minor child (sic), the Court was officially informed that he was considered to be a sexual psychopath with a personality disturbance, that of passive-aggressive personality, and recommended no further hospitalization.
“The latter diagnosis indicates that it was felt that subject man did not suffer from a neurotic or psychotic disorder, and that his sexual acts were considered to be characterological defects inherent in his basic personality.” (Emphasis supplied.)
* * * “In view of the foregoing information, this Bureau is of the opinion that the type discharge awarded the man was appropriate, in accordance with current instructions, that medical documentation of his personality disorder was adequate, and that there is no merit in his application for retirement by reason of physical disability.”
[Reduced to simple terms, the position of the Government is that plaintiff, a sexual psychopath, did not have any mental or physical disability, did- not suffer from a neurotic or psychotic disorder, but that his conduct was caused by “characterological defects inherent in his basic personality.” The report of mental examination of plaintiff by a doctor at the California State Hospital to which he was committed, in summary also found plaintiff to be athe severely neurotic individual * * * bordering on an overt psychosis of paranoid schizophrenia.'’’
Without engaging in medical semantics, it is difficult to see how the Navy’s medical experts, who never saw plaintiff, could have found that plaintiff “did not suffer from a neurotic or psychotic disorder” on the basis of the California hospital diagnosis, or how the Navy concluded that there was not even a doubt as to whether plaintiff had a mental or physical disability.
Plaintiff’s medical record in the Navy establishes that in 1945, ten years before his final discharge, he was suffering from a psychiatric condition after 14 years continuous sea duty; that he had symptoms of “obsessive-compulsive-type hypochrondriacal preoccupation of depression and of com *690 pulsive sexuality.” At that time it was recommended that he be ordered to duty in the continental United States as a matter of preventive psychiatry.
While plaintiff did not personally appear before the Navy correction board in 1954 on hearing of his application, he was represented by counsel who presented plaintiff’s statement in writing and an affidavit by a California psychiatrist, who, after reciting the history of plaintiff’s case, and upon personal observation of plaintiff, reached this conclusion:
“Impression: Schizophrenic personality, immature, unstable and paranoid. This man should never have been accepted into the Navy. His precarious relation to reality has been greatly aggravated by the strains and stresses of long-continued uninterrupted sea-duty. The least one can say is that he had a pre-existing mental abnormality which was severely aggravated by service. He therefore should have had a disability discharge. Although the events which led to his imprisonment were interpreted as ‘criminal’ or ‘misconduct’ on his part, his behavior was in reality psychopathic and this psychopathy was, if not induced, at least aggravated by the prolonged sea-duty.
“The prognosis is doubtful. He is in need of and willing to accept psychiatric help and has demonstrated a cooperative attitude. He has sufficient insight to make rehabilitation feasible and possible.”
After the California court found that plaintiff was a sexual psychopath, it directed that he continue to be confined in a hospital for psychiatric treatment, where he remained until November 11, 1955. This was eleven months after the Navy discharged him, in absentia, on the basis that he had no mental disability but did have a basic character defect. Certainly there was at least doubt in the minds of the California hospital authorities as to whether plaintiff had a “mental or physical disability” during the eighteen months of their psychiatric observation and treatment of plaintiff. He was released by the state hospital as having received the maximum benefit from his eighteen months of hospitalization, with the statement by the hospital authorities to the court that he was no longer a menace to the health or safety of others. He was found guilty of a misdemeanor, “contributing to the delinquency of a minor,” and was placed upon probation for one year.
*691 Certainly it appears that at the time of plaintiff’s discharge for unsuitability, there was to say the least “doubt as to the existence of a mental or physical disability” and he should have been brought before a board of medical survey for a determination of fact, pursuant to the requirements of the regulation under which he was discharged. Furthermore, there was no compliance with the requirement of this same regulation as to notice to plaintiff of the contemplated action and an opportunity to submit a signed statement in his own behalf.
Having chosen to institute administrative proceedings for a type of discharge less than honorable -under Article C-10310, the Navy was bound to comply with the administrative requirements of this regulation. Service v. Dulles, 354 U.S. 363; Watson v. United States, 142 Ct. Cl. 749; Glackum v. United States, 148 Ct. Cl. 404, 296 F. 2d 226. There was a clear failure of the naval authorities to comply with the express requirements of the regulation which resulted in an illegal and invalid administrative discharge from the Navy, and the correction board was duty bound to change this result.
Plaintiff is entitled to judgment for active duty pay and allowances of a chief boatswain’s mate credited for the period from December 8,1954 — when he was discharged — to May 8, 1956, when the term of his enlistment would have ordinarily expired.
Plaintiff is also seeking the retainer or retired pay of a transferred Fleet Reservist credited with his length of service of over 20 years for the period from May 8, 1956, when his final enlistment would have ordinarily expired, to the date of judgment.
Plaintiff relies upon the provisions of section 2 of the Act of August 10,1946,60 Stat. 993, 994, which provides :
See. 2. Section 204 of the Naval Reserve Act of 1938 (52 Stat. 1179) is hereby amended to read as follows:
Sec. 204. Members of the Navy who first enlisted in the Navy after July 1,1925, or who reenlisted therein after July 1,1925, having been out of the Regular Navy for more than three months, may upon their own request be transferred to the Fleet Reserve upon the completion of at least twenty years’ active Federal service. After *692 such transfer, except when on active duty, they shall be paid at the annual rate of 2*4 per centum of the annual base and longevity pay they are receiving at the time of transfer multiplied by the number of years of active Federal service: * * *”
Plaintiff asserts that when he signed the receipt for his discharge papers at the state hospital, he thought he was to be transferred to the Fleet Eeserve by reason of his length of service.
In accordance with its decision upholding the validity of the discharge, the correction board refused to correct plaintiff’s record to show that he was transferred to the Fleet Eeserve. Since we have decided that the discharge was illegal, and inasmuch as the invalid discharge aborted the normal course of events whereby plaintiff would have been transferred, upon expiration of his enlistment, to the Fleet Eeserve, plaintiff is entitled to recover retainer pay of a Fleet Eeservist of his rank and years of service from May 8, 1956 to the date judgment is entered in this proceeding.
Judgment will be entered for plaintiff for active duty pay and allowances from December 8, 1954 to May 8, 1956, and retainer pay of a Fleet Eeservist from May 8, 1956 to the date of entry of judgment in this proceeding, in amounts commensurate with plaintiff’s rank and years of service to be determined pursuant to Eule 38 (c). Defendant’s motion for summary judgment will be denied.
It is so ordered.
Ebbd, Justice {Bet), sitting by designation; Laramoee, Judge/ Whitaker, Judge; and JoNes, Chief Judge, concur.
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on June 27, 1962, that judgment for plaintiff be entered for $14,843.30.