**Kenneth James CARLISLE, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–25C.

United States Court of Federal Claims.

July 22, 2005.

Kenneth J. Carlisle, Jr., pro se.

Sharon A. Snyder, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant.

## OPINION

ALLEGRA, Judge.

In this military pay case, the plaintiff was involuntarily separated from the Army, but later was reinstated after he successfully applied for correction of his military records. He claims that, upon his reinstatement and subsequent retirement, various errors were committed in determining his back pay and veterans benefits. Defendant has moved to dismiss this case and, alternatively, seeks judgment on the administrative record. In response, plaintiff has filed a cross-motion for judgment on the administrative record.

## I. FACTS

By way of background, the relevant facts in this case briefly are as follows:

Plaintiff, Kenneth James Carlisle, Jr., is a former Sergeant First Class in the Army of the United States, who retired, after over twenty years of service, on January 31, 2004. Prior to 1997, plaintiff was an Army recruiter with an excellent military record. In 1997, he was the subject of civilian criminal proceedings. Plaintiff was never convicted of any crime, and, indeed, all records of the proceedings against him were expunged from the public record. Nevertheless, the actions underlying those criminal proceedings triggered an official letter of reprimand from the Army and an unfavorable evaluation report. Plaintiff was separated from the Army in a reduction-in-force program and issued an honorable discharge on February 13, 1999. He was not permitted to reenlist in the Army.

On February 4, 2000, plaintiff filed a complaint in this court (No. 00–59C) seeking correction of his military records, reinstatement, and associated compensation. Shortly thereafter, the parties filed a joint motion requesting that this court stay the proceedings and remand the case to the Army Board for Correction of Military Records (ABCMR). The court granted that motion.

On July 24, 2000 plaintiff filed an application for correction of his military records, seeking the removal from his records of both the letter of reprimand and the unfavorable evaluation report. On June 26, 2001, the ABCMR determined that the letter and evaluation report were based inappropriately on the civilian criminal matters that were no longer a matter of record and it recommended that they be expunged. Finding that, without these documents, plaintiff likely would not have been barred from reenlistment, the ABCMR further recommended that "the applicant's separation action should be voided" and that he should be reinstated "on active duty in pay grade E–7 without any loss of creditable service and with restoration of all rights and privileges, including all appropriate back pay and allowances." On June 27, 2001, the Secretary of the Army, acting through a Deputy Assistant Secretary, approved the recommendations of the ABCMR. Based on this favorable resolution, on July 3, 2001, plaintiff filed a motion to dismiss his initial case, which was granted on July 9, 2001. On August 3, 2001, plaintiff received further written confirmation that the ABCMR recommendations had been adopted. Plaintiff was restored to active duty on September 10, 2001, effective February 13, 1999.

On October 17, 2001, plaintiff filed a "motion to reexamine the United States Court of Federal Claims Case No. 00–59C, under Rule 60(b)(3) misrepresentation," asserting that the Army had not effected his reinstatement according to the terms of the ABCMR decision. On May 9, 2002, this court denied this motion on grounds that two of plaintiff's demands for relief were beyond its jurisdiction and that a third—review of the implementation of the ABCMR decision—"might properly come before this court," but not under

RCFC 60(b)(3). On August 29, 2002, plaintiff filed essentially the same motion in the United States District Court for the Eastern District of Virginia, which, on December 6, 2002, likewise dismissed the motion for lack of subject matter jurisdiction.

On December 9, 2002, plaintiff filed an application with the ABCMR seeking relief similar to that requested in his previous motions under RCFC 60(b)(3). In addition, he requested that the ABCMR revisit its earlier decision to detail, more precisely, the back pay to which he was entitled. In March of 2003, plaintiff received from the Army and negotiated a partial settlement check for $50,516.67, representing a substantial portion of his back pay entitlement. On July 3, 2003, the ABCMR denied plaintiff's second application, finding that "its original recommendation in this case has been fully implemented as intended and that further specificity is not required in this case." The ABCMR found "no errors or injustice related to the applicant's reinstatement processing, the personnel management actions taken in concert with this reinstatement, or in the authorization of back pay and allowances from the [Defense Finance and Accounting Service]."

On January 2, 2003, plaintiff filed a complaint initiating this action. On February 12, 2004, this court issued an order dismissing all of plaintiff's claims except those involving: (i) his entitlement to supplemental recruiting pay; (ii) his entitlement to pay for accrued leave; and (iii) the validity of withholding federal income taxes from his back pay. Plaintiff subsequently amended his complaint to add a fourth claim, seeking what appears to be declaratory relief that his separation pay had been improperly set off against amounts owed him by the Department of Veterans Affairs for disability benefits. On April 7, 2004, defendant moved to dismiss all four of these counts for failure to state a claim, seeking, in the alternative, judgment on the administrative record. On May 3, 2004, plaintiff filed a cross-motion for judgment on the administrative record. Various filings as to these motions, including briefs and supplemental briefs, were made through March 16, 2005.

## II. DISCUSSION

Before turning to plaintiff's specific claims, a brief recitation of the standards governing the review of this action is in order.

### A. Standards of Review

Dismissal under RCFC 12(b)(6), for failure to state a claim, is appropriate "when the facts asserted by the plaintiff do not entitle him to a legal remedy." *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000). In reviewing such a motion, the court must accept, as true, the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and must construe all reasonable inferences in favor of the non-movant. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001).

▮ The standard for deciding a motion for judgment on the administrative record, pursuant to RCFC 56.1, bears some threshold similarities to that governing a motion for summary judgment under RCFC 56, but is different in core respects. Highlighting those differences, the Federal Circuit, in *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed.Cir.2005), recently held that courts must "distinguish ... [a] judgment on the administrative record from a summary judgment requiring the absence of a genuine issue of material fact." The *Bannum* court observed that while RCFC 56.1(a) incorporates the provisions of RCFC 56(a) and (b), it does not incorporate any of the other paragraphs of RCFC 56, including (c) and (d). *Id.* at 1356–57. The latter omission, the court noted, is significant, as paragraphs (c) and (d) are the source of twin propositions commonly associated with summary judgment motions—that the existence of a genuine issue of material fact precludes a grant of summary judgment and that inferences be weighed in favor of the non-moving party. The Federal Circuit held that the latter principles are inapplicable to a motion for judgment on the administrative record under RCFC 56.1. *Id.* at 1356 ("Notably, RCFC 56.1 does not incorporate RCFC 56(c) or (d), yet those subsections provide the basis for denying summary judgment based on a genuine issue of material fact, and for drawing

inferences in favor of the non-moving party."). The appellate court thus made clear that, under RCFC 56.1, the existence of a fact question neither precludes the granting of a motion for judgment nor requires this court to conduct a full blown evidentiary proceeding. Rather, such fact questions must be resolved by reference to the administrative record, as properly supplemented—in the words of the Federal Circuit, "as if [this court] were conducting a trial on [that] record." *Id.* at 1357; *see also Doe v. United States,* 66 Fed.Cl. 165, 174–75 (2005).[1]

The approach mapped by the Federal Circuit in *Bannum* makes particular sense given the deferential review conducted in cases such as this. Thus, in reviewing administrative decisions affecting military pay, this court applies a traditional administrative standard of review, *i.e.,* whether the decision was "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law." *Doe v. United States,* 132 F.3d 1430, 1434 (Fed.Cir.1997); *see also Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983); *Wells v. United States,* 46 Fed.Cl. 178, 181 (2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Overall, a plethora of authority mandates judicial deference to military decisions, including those rendered by the corrections boards. *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) ("[D]ecisions as to the composition, training, equipping, and control of a military force are essentially professional military judg-

ments."); *Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("[J]udges are not given the task of running the Army."); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 814 (1979) (this court will "not substitute [its] judgment for the board's when reasonable minds could reach differing conclusions"). As the Federal Circuit has observed, "[j]udicial deference must be 'at its apogee' in matters pertaining to the military and national defense." *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir. 1988) (quoting *Rostker v. Goldberg,* 453 U.S. 57, 70, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981)).

**B. Plaintiff's Claims**

As mentioned, plaintiff has presented four claims to this court, arising out of his reinstatement and subsequent retirement, *to wit:* (i) that he is entitled to additional accrued leave pay; (ii) that income taxes were improperly withheld on the back pay that he received, which he claims is exempt from taxation; (iii) that separation pay relating to his initial discharge was improperly recouped against his veterans disability payments; and (iv) that he was entitled to "Special Duty Assignment Pay" during the period of his constructive service. The court will consider these claims *seriatim.*

**(i) Claim for Accrued Leave Pay.**

When plaintiff was honorably discharged in 1999, he was paid $2,316.60 for 30 days of unused accrued leave, as required by 37 U.S.C. § 501(b)(1) (1999), and the regulations thereunder. When he was reinstated, the

---

1. In *Bannum, supra,* the Federal Circuit noted that, in *Banknote Corp. of Am. Inc. v. United States,* 365 F.3d 1345, 1352–53 (Fed.Cir.2004), it had erroneously conflated the standards under RCFC 56 and 56.1, albeit in *dicta.* In this regard, the *Bannum* court stated that—

> Although it never reached the factual question of prejudice, the *Banknote II* court added that it is the trial and appellate courts' task to "determine whether there are any genuine issues of material fact as to whether the agency decision lacked a rational basis or involved a prejudicial violation of applicable statutes or regulations." This language equates a RCFC 56.1 judgment to a summary judgment under RCFC 56 and is unnecessary to the *Banknote II* holding. Because the court decided the issue

by an interpretation of the solicitation, *e.g.,* making a legal determination, the court in *Banknote II* did not need to consider whether the trial court overlooked a genuine dispute or improperly considered the facts of that case. *Bannum,* 404 F.3d at 1354. Prior decisions of this court made the same error. *See, e.g., JWK, Int'l Corp. v. United States,* 49 Fed.Cl. 371, 387 (2001), *aff'd,* 279 F.3d 985 (Fed.Cir.2002). Indeed, while a host of decisions of this court refer to a "motion for *summary* judgment on the administrative record," *see, e.g., ManTech Telecom. & Inf. Sys. Corp. v. United States,* 49 Fed.Cl. 57, 64–65 (2001), *aff'd,* 30 Fed.Appx. 995 (Fed.Cir. 2002) (emphasis added), there is no such motion under RCFC 56.1, as properly construed.

Army recredited his leave account with the 30 days of accrued leave, but charged plaintiff with a debt for the $2,316.60 that he previously received. That debt was then set off against the back pay that plaintiff received upon reinstatement. In this lawsuit, plaintiff initially averred that this set off was improper.

During the briefing of the pending motions, defendant, to its credit, indicated that plaintiff was eligible to seek a waiver that would result in the return of the full $2,316.60. Plaintiff applied for that waiver and, according to his filing of March 16, 2005, the waiver was granted on February 23, 2005. Plaintiff received a check for $2,316.60 on March 1, 2005. As such, it appears that this claim is moot and, therefore, should be dismissed. *See, e.g., City of Erie v. Pap's A.M.,* 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (claim must be dismissed as moot "when the issues presented are no longer live"); *Rothe Development Corp. v. Dept. of Defense,* 413 F.3d 1327 (Fed.Cir. 2005) (same).

### (ii) Claim Regarding Improper Withholding of Taxes.

■ Plaintiff reentered active duty status, following a period of constructive service, on September 10, 2001. In March of 2003, he received and negotiated a partial settlement check for $50,516.67, representing a substantial portion of his back pay entitlement. Federal income tax was withheld from that back pay. At the time he received the check, plaintiff was serving in Operation Enduring Freedom in Iraq, in an area that had been designated a combat zone by the President. *See* Executive Order 12744 (Jan. 21, 1991). Plaintiff asseverates that the withholding of income tax from his back pay was improper under 26 U.S.C. § 112(a) and seeks the amount so withheld.

At first blush, this claim might be viewed as a request for a tax refund, triggering various exhaustion requirements that plaintiff has not met. *See, e.g.,* 26 U.S.C. 7422(a) (2003) (no tax refund suit prior to filing a claim for refund). But, binding precedent in this circuit indicates that this claim instead should be treated as relating to pay under 10

U.S.C. § 1552. *See, e.g., Blum v. United States,* 227 Ct.Cl. 555, 1981 WL 21399 (1981); *Ray v. United States,* 197 Ct.Cl. 1, 453 F.2d 754, 755–57 (1972). Nevertheless, plaintiff is not entitled to relief on this issue.

Section 112 of the Code originally was enacted in 1945 to provide a tax benefit to members of the armed services whose lives were placed at risk because of service to their country. *See* Revenue Act of 1945, Pub.L. No. 79–214, § 141(a), 59 Stat. 566, 571 (1945); *see also* H. Rep. No. 83–1337, at 16, A36 (1954); S. Rep. 83–1622, at 17, 187 (1954). To effectuate this purpose, section 112(a) of the Code states, in pertinent part:

> Gross income does not include compensation received for active service as a member below the grade of commissioned officer in the Armed Forces of the United States for any month during any part of which such member—
>
> (1) served in a combat zone, . . . .

26 U.S.C. § 112(a) (2003). The regulations thereunder emphasize that "[t]he exclusion under section 112 applies only if active service is performed in a combat zone" and indicate that "[t]he time and place of payment are irrelevant in considering whether compensation is excludable under section 112; rather, the time and place of the entitlement to compensation determine whether the compensation is excludable under section 112." 26 C.F.R. § 1.112–1(b)(1) & (4) (2003). They further expound that "entitlement to compensation fully accrues upon the completion of all actions required of the member to receive the compensation." *Id.* at § 1.112–1(b)(4). To illustrate these principles, the regulations provide the following example–

> In July, while serving outside a combat zone, an enlisted member voluntarily reenlisted. In February of the following year, the member, while performing services in a combat zone, received a bonus as a result of the July reenlistment. The reenlistment bonus cannot be excluded from income as combat zone compensation although received while serving in the combat zone, since the member completed the necessary action for entitlement to the reenlistment bonus in a month during which the member had neither served in the

combat zone nor was hospitalized for wounds incurred while serving in a combat zone.

*Id.* at § 1.112–1(b)(5) (Example 6).

Given this statutory and regulatory framework, it is beyond peradventure that plaintiff's back pay cannot be excluded from income as combat zone compensation under section 112. The necessary actions for entitlement to these funds were completed in a month during which he did not serve in a combat zone. Specifically, every indication is that plaintiff's entitlement to compensation for his constructive service accrued no later than the time of his reinstatement to active duty on September 10, 2001, eighteen months before his service in a combat zone began. Under the Treasury Regulations, the fact that plaintiff received these funds corresponding to this constructive service while serving in a combat zone is "irrelevant." 26 C.F.R. § 1.112–1(b)(4). It is also irrelevant that plaintiff completed the paperwork for receiving his backpay allegedly in March of 2003, while serving in Iraq. To allow ministerial acts, such as signing for a check or finalizing a form, to trigger the section 112 exemption would be to trivialize a statute with a very serious purpose and allow its provisions to be easily manipulated—plaintiff, after all, seeks to exempt from tax all his pay for a period of almost two years of constructive service, none of which he actually served in a combat zone. In no way can such a result be squared with the purposes of the exemption created by Congress, captured in the plain meaning of the terms of section 112, which apply only to "compensation received for active service ... in a combat zone." *See Waterman v. Comm'r,* 179 F.3d 123, 127 (4th Cir.1999) (section 112 did not apply to separation payment; compensation was not received for service in the Persian Gulf; "time and place of acceptance of the separation payment are irrelevant to this determination").[2] Accordingly, plaintiff's claim for exemption must be rejected.

### (iii) Claim for Separation Pay.

Plaintiff next contends that, following his retirement, the Department of Veterans Affairs has inappropriately reduced his disability payments by setting off against them separation pay that allegedly should have been recouped upon plaintiff's reinstatement. As a threshold matter, this court must consider whether it has jurisdiction to consider this claim.

■ The Veterans' Judicial Review Act of 1988, 38 U.S.C. §§ 7251–7299 (2004), provides that the exclusive remedy for the denial of veteran's benefits is to appeal to the Court of Veterans Appeals. *Id.* § 7252(a). Consequently, this court does not have jurisdiction to review the denial of veterans benefits. *See Gardner v. Brown,* 5 F.3d 1456, 1463 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462, (1994); *Sanders v. United States,* 34 Fed.Cl. 75, 79 (1995), *aff'd,* 104 F.3d 376 (Fed.Cir.1996); *see also* 38 U.S.C. § 511(a); *Larrabee v. Derwinski,* 968 F.2d 1497 (2d Cir.1992); *Hicks v. Veterans Admin.,* 961 F.2d 1367 (8th Cir.1992). But this begs the question whether the claim *sub judice* is more properly viewed as one involving such a denial or instead as an effort to recoup the separation pay that the Department of Veterans Affairs has offset against plaintiff's veterans benefits. Two reasons lead this court to conclude that plaintiff's claim is more properly viewed in the former light.

■ First, an examination of the briefs reveals that plaintiff does not seek an affirmative recovery of his separation pay. Rather, he seeks a declaration that the Department of Veterans Affairs should not reduce his disability benefits by recouping his separation pay. Accordingly, as actually framed by plaintiff, his claim does not appear to sound within the Tucker Act, 28 U.S.C. § 1491. Second, the Board of Veterans Appeals and the Court of Veterans Appeals both have regularly considered the type of claim that plaintiff raises here. This is illus-

---

2. The court would reach this same conclusion whether it narrowly construed the statute as one affording a tax exemption or liberally construed it as effectuating an important public policy. *Compare United States v. Centennial Sav. Bank*

*FSB,* 499 U.S. 573, 583, 111 S.Ct. 1512, 113 L.Ed.2d 608 (1991) (tax exemptions narrowly construed) *with United States v. Pleasants,* 305 U.S. 357, 363, 59 S.Ct. 281, 83 L.Ed. 217 (1939) (charitable exemption not narrowly construed).

trated by a host of cases that present a myriad of issues involving such claims—from those testing the legality of such recoupments, to those factually questioning the amount of the recoupment. *See, e.g., Majeed v. Principi,* 16 Vet.App. 421, 426–27 (2002) (legal issues); *Sabonis v. Brown,* 6 Vet.App. 426, 430 (1994) (legal issue); Bd. Vet.App. 0502688, 97–11 893 (Feb. 4, 2005) (legal issue); Bd. Vet.App. 0426711, 98–17 693A (Sept. 24, 2004) (legal issue); Bd. Vet.App. 0407495, 03–03 725 (March 23, 2004) (fact issue involving amount of separation pay); Bd. Vet.App. 0404645, 02–09 877 (Feb. 19, 2004) (fact issue involving amount of separation pay). Accordingly, it would appear that plaintiff's claim on this issue lies, if at all,[3] within the exclusive review mechanism established by Congress for the denial of veteran's benefits. It follows that plaintiff's claim before this court must be dismissed for lack of jurisdiction.

### (iv) Claim for Special Duty Assignment Pay.

■ Finally, the court comes to plaintiff's fourth and last claim—that he was entitled to "Special Duty Assignment Pay" for the period he was deemed to have constructively served. Some additional facts are necessary to analyze this issue.

Plaintiff was assigned to a recruiting station beginning in 1994. Recruiting is a specialty designated by the Secretary of the Army under 37 U.S.C. § 307 as eligible for special duty assignment pay (SDAP).[4] In the spring of 1997, plaintiff received medical attention at the Fort Meade Community Mental Health Service. A report by one of the physicians who evaluated him, which was eventually received by plaintiff's commanding officer, indicated that plaintiff "appears to have a paranoid personality style, possibly a disorder" and recommended that he be "supervised when functioning in the capacity of a recruiter and be reassigned to his primary MOS which does not require the same interpersonal skills." Some time thereafter, plaintiff's commanding officer prepared—but did not file—an undated memorandum recommending that plaintiff be reassigned "as an unqualified recruiter," citing his failure to maintain acceptable standards of conduct "due to a diagnosed paranoid personality style." Sometime after this document was drafted, plaintiff was indicted by civilian authorities on a variety of charges stemming

**3.** Notably, the listed cases indicate that recoupment of the separation pay is required by 10 U.S.C. § 1174(h)(2) (2004), which states that—

> a member who has received separation pay under this section ... based on service in the armed forces shall not be deprived, by reason of his receipt of such separation pay, severance pay, or readjustment pay, of any disability compensation to which he is entitled under the law administered by the Department of Veterans Affairs, but there shall be deducted from that disability compensation an amount equal to the total amount of such separation pay, severance pay, and readjustment pay received ....

The implementing regulations for this statute, 38 C.F.R. § 3.700(a)(5)(i) (2004), reiterate that "[a] veteran who has received separation pay may receive disability compensation for disability incurred in or aggravated by service prior to the date of receipt of the separation pay subject to recoupment of the separation pay."

**4.** As in effect from the time of plaintiff's discharge through October 30, 2000, 37 U.S.C. § 307 provided, in pertinent part–

> (a) An enlisted member who is entitled to basic pay and is performing duties which have been designated under subsection (b) as extremely difficult or as involving an unusual degree of responsibility in a military skill may, in addition to other pay or allowances to which he is entitled, be paid special duty assignment pay at a monthly rate not to exceed $275. In the case of a member who is serving as a military recruiter and is eligible for special duty assignment pay under this subsection on account of such duty, the Secretary concerned may increase the monthly rate of special duty assignment pay for the member to not more than $375.

> (b) The Secretary concerned shall determine which enlisted members under his jurisdiction are to be paid special duty assignment pay under subsection (a). He shall also designate those skills within each armed force under his jurisdiction for which special duty assignment pay is authorized and shall prescribe the criteria under which members of that armed force are eligible for special duty assignment pay in each skill. He may increase, decrease, or abolish such pay for any skill.

Effective October 30, 2000, P.L. 106–398, § 631, 114 Stat. 1654 (2000), modified section 307(a) by substituting "$600" for "$275," and by deleting deleted the second sentence thereof (establishing the potential $375 special rate increase for military recruiters).

from his interaction with an individual who worked at one of the schools at which he recruited. On July 25, 1997, after the criminal proceedings were initiated, plaintiff's commander ordered him to cease having contact with recruiting personnel outside his own chain of command, to avoid entering any recruiting station, and to avoid contact with any prospective recruits.

On April 3, 1998, following the issuance of the negative evaluation report that eventually contributed to plaintiff's wrongful separation from the Army, plaintiff's commanding officer again drafted—and this time filed—a memorandum recommending that he be reassigned from recruiting duties, asserting that plaintiff was an "unsuitable" recruiter under paragraph 5–6 of Army Regulation 601–1. The memorandum listed various bases for the reassignment: one was the "paranoid personality style" referred to in the earlier unfiled memorandum; several stemmed from the criminal charges against plaintiff that were later expunged; and another asserting that plaintiff had unlawfully transported alcohol in his government-owned vehicle in December of 1996. Attached to the memorandum, referenced as "documentation in support of this action," was a series of documents, most of which related to the expunged criminal charges. The memorandum concluded that "based on the contents of the ... enclosures, it has been determined that further training, counseling, guidance and supervision would not correct your inadequacies and permit your continued service on recruiting duty." Plaintiff's entitlement to SDAP was terminated effective February 2, 1998.

Plaintiff did not directly raise the issue of his entitlement to the SDAP in his first application to the ABCMR. Nonetheless, in the course of its findings, the ABCMR noted that–

while the applicant's chain of command appeared to initially question the applicant's ability to perform his duties as a recruiter based on the April 1997 psychiatric evaluation it was the civilian charges which ultimately resulted in the less than favorable evaluation report and memorandum of reprimand. The fact that the applicant's command did not pursue the original relief based on the psychiatric evaluation, but rather chose to pursue separation action under the provisions of Army Regulation 635–200 for misconduct tends to support the Board's conclusion that the evaluation report was based solely on the civilian charges. The Board also notes that in spite of the applicant's civilian charges he remained in a recruiter capacity, and received a favorable evaluation report for the period September 1997 through May 1998, which further confirms that the report in question was based solely on the civilian charges.

The ABCMR further concluded that "[h]ad the [plaintiff's] chain of command truly believed [he] was unfit for recruiting duties it would have appeared that the original relief action would have been pursued and he would not have been allowed to remain in a recruiter capacity through May 1998."

In his second application to the ABCMR, filed on December 9, 2002, plaintiff sought payment of back SDAP from the date of his termination through the end of his constructive service, arguing that the SDAP "was unjustly stopped for the same reasons that his records needed to be corrected, and therefore is unjust." In its July 3, 2003, memorandum, however, the ABCMR rejected this assertion, finding that the prior Board's decision had not resolved this issue and concluding that "[g]iven the receipt of SDAP is contingent on a member performing the special duty for which it is authorized, the Board finds it would not be appropriate to provide [plaintiff] SDAP for the reinstated period of service."

Before this court, plaintiff again argues that since his reassignment from recruiting duty was based upon the same criteria that the Board found had improperly caused his separation from the Army, those criteria, *a priori*, cannot support the decision to reassign him from recruiting. As such, he contends that he is entitled to SDAP for the entire period of his constructive service. Defendant, however, remonstrates that special pays are awarded at the discretion of the Secretary of the Army and that this court is not qualified to review substantive merits of

a decision to terminate it. Defendant cites several cases in support of this proposition, principal among which is *Groves v. United States,* 47 F.3d 1140 (Fed.Cir.1995). *Groves,* however, appears to cut the other way.

Major Groves was an Army officer who was tried by a court-martial. From the time he arrived at Fort Hood until his court-martial in 1983, Groves had performed his military duty as an orthopedic surgeon and, as such, was qualified for, and had consistently received, financial bonuses designed to attract and retain certain professionals in military service, including Variable Special Pay, Medical Additional Special Pay, and Incentive Special Pay. Following his court-martial, he was convicted of various charges and sentenced to dismissal, forfeiture of pay and allowances, and confinement for three months, from August 27, 1983, through November 4, 1983. During his confinement, he remained a commissioned officer in the Army Reserves. However, under a prior agreement with the Army, he received Incentive Special Pay only until September 30, 1983; Groves entitlement to Medical Additional Special Pay had lapsed even earlier, on June 30, 1983, when his agreement for that compensation was not renewed. *Groves,* 47 F.3d at 1142. His conviction was subsequently overturned on appeal, with the Court of Military Appeals directing that "[a]ll rights, privileges and property of which the accused has been deprived by virtue of the findings of guilty and sentence so set aside will be restored." *Id.* at 1143. A dispute then arose as to Grove's entitlements to various of the special pays that he previously had received. This court held that he was entitled only to his basic pay and allowances for the constructive service period between the date of his sentencing and the date of his discharge. *Id.*

The Federal Circuit reversed. It began by noting, similar to defendant's claim here, that "[i]t is unarguable that the special pay at issue here is awarded at the discretion of the Secretary of the Army, and that no court is qualified to review the substantive merits of a decision to deny it, so long as the decision comports with any procedural standards mandated by statute or regulation." 47 F.3d at 1144 (citing *Voge v. United States,* 844 F.2d 776, 779–80 (Fed.Cir.1988) and *Adair v. United States,* 227 Ct.Cl. 345, 648 F.2d 1318, 1323 (1981)).[5] The Federal Circuit, however, held that these precedents were distinguishable because it was not directly reviewing the Secretary's exercise of discretion in terminating Groves' entitlement to various special pay, but rather merely enforcing the command that all his rights, privileges and property affected by the court-martial be restored. *Groves,* 47 F.3d at 1144. It noted that the court's order in the latter regard was dictated by 10 U.S.C. § 875(a), which provides that "all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved ... shall be restored." The Federal Circuit held that effectuation of the order overturning Grove's conviction required restoration not only of the Incentive Special Pay that lapsed during his confinement, but also of the Medical Additional Special Pay that lapsed on June 30, 1983, while charges against Groves were pending, but before his conviction. As to this point, the Federal Circuit stated:

> While this decision would normally be well within the Secretary's discretion, see *id.* § 302(a)(4), that discretion is tempered by the statutory command of 10 U.S.C. § 875(a) to restore to Groves all rights, privileges, and property affected by the court-martial conviction. It cannot stand if the Secretary made the decision to deny Medical Additional Special Pay because Groves was under charges at that time. Absent evidence that the Secretary would have otherwise denied Groves the special pay at issue, the statutory mandate to restore all rights, privileges, and property includes any special pay that Groves was receiving prior to his court-martial, and for which he would have continued to be eligible had the conviction never occurred.

*Id.* at 1144. It remanded the case to this court with instructions to reflect the special pays in Groves' back pay award. *Id.* at 1148.

---

5. More recent cases reiterate this rule. *See, e.g., Fisher v. United States,* 402 F.3d 1167, 1177 (Fed.Cir.2005); *Dysart v. United States,* 369 F.3d 1303, 1317–18 (Fed.Cir.2004).

As in *Groves, supra,* this court is not called upon to review whether the Secretary of the Army correctly terminated plaintiff's SDAP. Rather, the issue is whether defendant has failed to comply with the first Board's recommendation, adopted by the Secretary of the Army, that plaintiff should receive "restoration of all rights and privileges, including all appropriate back pay and allowances." It appears that the second Board did not properly evaluate this issue because it proceeded on several faulty premises.

First, the second Board apparently felt that it was being asked to rule directly on whether plaintiff was entitled to the SDAP under 37 U.S.C. § 307. In this regard, it stated that "[g]iven the receipt of SDAP is contingent on a member performing the special duty for which it is authorized, the Board finds that it would not be appropriate to provide [plaintiff] SDAP for the reinstated period of service." However, in holding that the doctor involved there could recover special pay for periods of time when he was not performing his role as a physician, the Federal Circuit, in *Groves, supra,* plainly indicated that whether a service member has actually performed special duty, or otherwise met the requirements for receiving such pay, does not control whether he should receive special duty pay as part of the restoration of his rights and privileges. Indeed, in the decision reversed by the Federal Circuit in *Groves, supra,* this court denied Groves the

special pay he sought based on a premise similar to that mistakenly adopted by the second Board here—that "[p]laintiff cannot show that the additional requirements that permit eligibility for specialty or incentive payments were satisfied during any of the relevant periods." *Groves v. United States,* 30 Fed.Cl. 28, 35 (1993). To the contrary, this court and its predecessor generally have awarded special pay to service members as the result of constructive service, even where such pay or benefits ordinarily would be received only for active service. *See, e.g., Smith v. United States,* 155 Ct.Cl. 682, 692, 1961 WL 8730 (1961) (credit for retainer pay of a fleet reservist); *Metz. v. United States,* 61 Fed.Cl. 154, 173 n. 33 (2004) (credit for retirement); *Holley v. United States,* 33 Fed. Cl. 454, 457 (1995) (credit for overseas housing allowance); *see also Schuenemeyer v. United States,* 776 F.2d 329, 332 (Fed.Cir. 1985) (reflecting inclusion of special aviation pay in back pay award).[6] Thus, the second Board was simply wrong in concluding, as a matter of law, that it could not award SDAP as part of the restoration of plaintiff's rights and privileges.[7]

Second, the later Board erred in holding that the first Board had made "[n]o judgment ... on the validity of [plaintiff's] removal from recruiting duty." In fact, the first Board concluded that, as in the case of plaintiff's separation from the Army, the ci-

**6.** To be sure, in *Boruski v. United States,* 140 Ct.Cl. 1, 155 F.Supp. 320, 324 (1957), the Court of Claims held that a court-martialed officer restored to his rights and privileges was not entitled to flight pay under 37 U.S.C. § 235 (1952). However, unlike most special pay statutes, including those at issue in *Groves* and here, section 235, as then in effect, provided very specific requirements for the receipt of flight pay, stating that service members were to receive such pay "when by orders of competent authority they are required to participate regularly and frequently in aerial flights, and when in consequence of such orders they do participate in regular and frequent aerial flights." *Id.*

**7.** In asserting that plaintiff may not receive SDAP for his constructive service, defendant contends that Chapter 8 of the Department of Defenses Financial Management Regulation requires a service member actually to perform duties in order to receive SDAP. The relevant regulation, however, does not appear to deal

with a situation such as this, but rather generically describes, in nonprescriptive terms, the circumstances under which SDAP may be received. *See* 7A DoDMR ¶ 080101B. An indication that these regulations do not prohibit SDAP from being awarded for constructive service may be found in paragraph 080206, which states:

> Military Service administrative regulations allow certain authorities to revoke orders which removed a member from proficiency rating or special duty assignment rating if the removal was without original basis of authority. When orders are so revoked, the member is entitled to proficiency pay or special duty pay for the entire period involved (if otherwise entitled to either pay).

Were the court to construe these regulations in the cramped fashion defendant contends, they would prohibit the payment of SDAP for constructive service even where a service member received that pay up until an erroneous discharge—a result that would decidedly clash with the restorative concept of constructive service.

vilian criminal charges improperly prompted the decision to remove plaintiff from his recruiting duties. Its findings detailed the interrelationship between the events leading up to plaintiff's reassignment from recruiting and those that led to his eventual separation from the Army, noting, in particular, the failure of plaintiff's commanding officer initially to pursue his reassignment based solely on his April 1997 psychiatric evaluation. Based upon these findings, the first Board specifically questioned the notion that plaintiff's eventual reassignment was based upon the April 1997 psychiatric evaluation, stating, in its conclusions, that "[h]ad the applicant's chain of command truly believed the applicant was unfit for recruiting duties it would have appeared that the original relief action would have been pursued and he would not have been allowed to remain in a recruiter capacity through May 1998." [8] The first Board thus clearly suggested that plaintiff's reassignment from recruiting was merely the initial step of a process that ultimately led to his separation from the Army. Accordingly, as in *Groves*, it is at least conceivable, and perhaps likely, that in ordering plaintiff restored to "all rights and privileges," the first Board intended that plaintiff would be reinstated at the pay level he would have received but for his commanding officer's erroneous reliance upon the civilian criminal charges—in other words, with SDAP intact.

In this court's view, the ABCMR has yet properly to consider whether, based upon the administrative record, plaintiff is entitled to the SDAP. That, unlike in *Groves, supra*, there is no statute involved here comparable to 10 U.S.C. § 875(a), dealing with courts-martial, does not alter this conclusion.[9] As was generally true in *Groves, supra*, the nature and scope of the inquiry here are determined by the Secretary's order that plaintiff be reinstated "with restoration of all rights and privileges, including all appropriate back pay [and] allowances." His order requires the ABCMR to consider whether plaintiff would have continued to receive SDAP had the erroneous course of conduct that led to his separation not been initiated. For this purpose, it matters not whether plaintiff was reassigned from recruitment a year or a day before he was separated. Rather, what appears important is whether the two events—reassignment and separation—were interrelated and represent a continuum of unjust conduct that the first Board and, in turn, the Secretary, intended to correct.[10] Approaching the issue in this fashion is consistent with the basic goal to be achieved in military pay cases, that is, to make the injured service member whole. *See Groves*, 47 F.3d at 1144; *Dilley v. Alexander*, 627 F.2d 407, 413 (D.C.Cir.1980).[11]

---

8. The first Board's conclusion in this regard conflicts with defendant's assertion, in its supplemental brief, that "[u]nlike the plaintiff in *Groves* ... who the Federal Circuit found would have continued to collect special duty pay but for his court martial, Mr. Carlisle would have been relieved of his recruiting duties, and therefore, ceased collecting special duty pay, even if he had not been charged ..."

9. Unlike section 875(a), 10 U.S.C. § 1552(c) (2001), which describes the process for resolution of claims incident to the correction of military records, merely provides that the Secretary "may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service." In the instant case, however, the Secretary already has ordered "restoration of all rights and privileges" and the question merely is whether such restoration includes the SDAP in question.

10. *See Metz v. United States*, 65 Fed.Cl. 631, 635–36 (2005) ("Assuredly, the court has neither the power nor the expertise to step into the shoes of a military board and award discretionary benefits.... Nonetheless, once a military personnel board has decided that benefits are appropriate and the Secretary's designee has expressly adopted that determination, this court would be hard pressed to explain convincingly why it should not award those benefits as part of the relief appropriate to compensate a claimant.")

11. In *Sanders, supra*, the Court of Claims described the nature of the relief that should be afforded by correction boards in the following broad terms—

> The broad impact of correction board action was described in *Denton v. United States*, 204 Ct.Cl. 188, 195, [1974 WL 21682] (1974), ... where we said:
> * * * In the context of the correction of a military record, this means that once a discretionary decision is made to correct a record, the grant of appropriate money relief is not discretionary but automatic. * * *

In short, as there is evidence that plaintiff's reassignment was interrelated with his later separation, this court believes that this issue should be remanded to the ABCMR to allow that administrative body to determine, in the first instance, whether restoration of plaintiff's rights and privileges was intended to or should include the receipt of SDAP for the period of his constructive service.[12]

## III. CONCLUSION

This court need go no further. Based on the foregoing, it **GRANTS**, in part, and **DENIES**, in part, defendant's motions and plaintiff's cross-motion. Pursuant to RCFC 56.2, the case shall be remanded to the ABCMR for further proceedings consistent with this decision for a period of six months. Proceedings before this court are suspended until January 23, 2006. The parties are directed to file joint reports indicating the status of proceedings on remand at intervals of 60 days, commencing with the date of this opinion. The first report shall be filed by September 19, 2005.

**IT IS SO ORDERED.**

---

Elsewhere we have said that where an applicant has convinced a correction board to correct his record it must not grant him "half-a-loaf" of relief. *DeBow v. United States,* 434 F.2d 1333, 193 Ct.Cl. 499 (1970) ... He must be made "whole." *Ray v. United States,* 453 F.2d 754, 197 Ct.Cl. 1 (1972). In general, "[m]ilitary correction boards 'have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief.'" ... *Yee v. United States,* 512 F.2d 1383, 1387–88, 206 Ct.Cl. 388, 398 (1975). 594 F.2d at 813 (internal citations omitted); *see also Hamrick v. United States,* 120 Ct.Cl. 17, 96

F.Supp. 940, 943 (1951) ("full correction of the error would require plaintiff's being put in the same position he would be in had the erroneous determination not been made").

12. ·*See* 28 U.S.C. § 1491(a)(2) (2004) ("In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."); *see also Metz v. United States,* 61 Fed.Cl. at 174–75; *Randolph v. United States,* 31 Fed.Cl. 779, 787 (1994); *Barth v. United States,* 24 Cl.Ct. 836, 842 (1992).